**In the Matter of C.S.**

**No. 2–06–116–CV.**

Court of Appeals of Texas,
Fort Worth.

Oct. 12, 2006.

Rehearing Overruled Nov. 2, 2006.

Joe B. Steimel, Wichita Falls, for appellant.

Barry L. Macha, District Attorney, Bryce Perry, Assistant Criminal District Attorney Wichita County, TX, Wichita Falls, for appellee.

PANEL A: LIVINGSTON, HOLMAN, and WALKER, JJ.

## OPINION

DIXON W. HOLMAN, Justice.

Appellant C.S. appeals an order authorizing the administration of psychoactive medication. In her first issue, she contends that the evidence was factually insufficient to prove that she was under a court order to receive inpatient mental health services. In her second issue, she argues that the evidence was legally and factually insufficient to show either that she lacked the capacity to make a decision regarding the administration of medication or that administration of the medication was in her best interest. We sustain Appellant's first issue and reverse and remand.

## BACKGROUND

Appellant has been diagnosed with schizoaffective disorder, bipolar type.[1] On March 9, 2006, Dr. Waseem Ahmed[2] filed an application for an order to authorize administration of psychoactive medication to Appellant under Texas Health and Safe-

---

1. In addition to her psychiatric disorder, Appellant also suffers from hydrocephalus, a pressure on the brain, which is not subject to being cured medically. She has a shunt to manage the pressure.

2. Dr. Ahmed is Appellant's physician. He has been treating her for approximately two years.

ty Code section 574.104[3] because Appellant was not complying with her treatment. The hearing on this order was held on March 20, 2006, at the Wichita Falls campus of the North Texas State Hospital System, where Appellant has been receiving services since November 2000.

Before beginning the hearing, the trial court stated that it would "take judicial notice of the contents of this file as of today's date and time." The file included Dr. Ahmed's application for the order to authorize psychoactive medications but no order for temporary or extended inpatient mental health services.[4] Dr. Ahmed and Appellant were the only two witnesses to testify at the hearing.

Dr. Ahmed testified that Appellant was delusional,[5] lacked the capacity to make a decision regarding the administration of her prescribed medication,[6] and refused several times to take medication voluntarily. He has prescribed mood stabilizers, antipsychotics, antidepressants, sedatives, hypnotics, and anxiolytics for her treatment. He testified that once medicated, Appellant may benefit from a better quality of life, including fewer mental illness symptoms and hospitalizations.[7]

At trial, Appellant stated that she did not want to take any more of these medications because they make her sluggish, are hard on her heart, make her very sick, and prevent her from sleeping. She denied making the delusional statements.

At the close of evidence, the court determined that the benefits of administering the medications were greater than the risks. The court granted the requested authorization, stating "that all terms and

---

3. Under section 574.104(a), a physician who is treating a patient may file an application for an order to authorize the administration of a psychoactive medication on behalf of the State. TEX. HEALTH & SAFETY CODE ANN. § 574.104(a) (Vernon Supp.2006).

4. Under Texas Rule of Appellate Procedure 34.5(c), this court has the authority to supplement the clerk's record with any "relevant item" that has been omitted from the clerk's record. TEX.R.APP. P. 34.5(c). On September 27, 2006, the clerk of this court contacted the clerk of the trial court to determine whether the trial court's file contained an order for temporary or extended inpatient mental health services. The trial court's clerk informed this court that the file did not contain any such order.

5. Dr. Ahmed testified that one of Appellant's delusions was her belief that she was actually someone else and had been kidnapped from her parents by her current parents. Another delusion was that she could go to Harvard Medical School and be a doctor there. Appellant is around fifty years old.

6. Dr. Ahmed testified that Appellant "has limited ability to understand and acknowledge the need for medication and benefits and risks of medication."

7. The alternative to court-ordered medication mentioned by Dr. Ahmed was electroconvulsive therapy, but he testified that this treatment was not indicated at the time because it is usually used when the medications do not work or when the patient is significantly dangerous to herself or others or is pregnant. Common side effects of the prescribed medications include sedation, drooling, and abnormality in blood cells and liver function; in extreme situations, death may result. Dr. Ahmed testified that Appellant has been maintaining normal white blood cell count for a long period of time and that she has not shown any symptoms of either tardive dyskinesia or neuroleptic malignant syndrome. Tardive dyskinesia is the involuntary movement of limbs, face, or tongue as a result of long-term therapy with antipsychotic drugs. RANDOM HOUSE UNABRIDGED DICTIONARY (2006), *available at* http://dictionary.reference.com/browse/tardive dyskinesia. Neuroleptic malignant syndrome is hyperthermia in reaction to the use of neuroleptic drugs, accompanied by extrapyramidal and autonomic disturbances that may be fatal. THE AMERICAN HERITAGE STEDMAN'S MEDICAL DICTIONARY (2002), *available at* http://dictionary.reference.com/browse/neuroleptic malignant syndrome.

provisions of the Texas Health & Safety Code have been complied with and after considering all of the evidence and testimony presented, the Court finds that the facts alleged in the application are true and correct and supported by clear and convincing evidence."

## FACTUAL SUFFICIENCY UNDER SECTION 574.106(a)(1)

■ In her first issue, Appellant argues that the trial court erred by authorizing the administration of psychoactive medications to her because the State failed to prove that she was under a court order to receive inpatient mental health services, thereby failing to satisfy section 574.106(a) of the Texas Health and Safety Code.[8] She does not dispute that she was a patient at the North Texas State Hospital and that Dr. Ahmed was her treating physician. The State counters that it was not required to present evidence to show that Appellant was under such a court order and that the evidence presented at trial and in the judicially noticed documents was factually sufficient to prove that she was already under such an order.

Section 574.102 states that this particular subchapter pertains to the application of medication to a patient "subject to an order for inpatient mental health services under this chapter or other law." TEX. HEALTH & SAFETY CODE ANN. § 574.102. Section 574.106(a)(1) reiterates that a

court may issue an order authorizing the administration of psychoactive medication to a patient who "is under a court order to receive inpatient mental health services." *Id.* § 574.106(a)(1). Therefore, the presence or absence of sufficient factual evidence of an inpatient mental health services court order is a critical first step in determining whether a court may properly issue an order authorizing the administration of psychoactive medication. *See, e.g., In re F.M.,* 183 S.W.3d 489, 500 (Tex.App.-Houston [14th Dist.] 2005, no pet.) (stating that a trial court may issue an order authorizing the administration of psychoactive medication only if the proposed patient is under a valid order for temporary or involuntary mental health services).

■ An assertion that the evidence is factually insufficient to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). We are required to consider all of the evidence in the case in making this determination, not just the evidence that supports the finding. *Mar. Overseas Corp. v. Ellis,* 971 S.W.2d 402, 406–07 (Tex.), *cert. denied,* 525 U.S. 1017, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998).

In factual insufficiency cases, our opinion must detail the evidence relevant to

---

8. At one point in her argument, Appellant states that the evidence submitted to prove section 574.106(a)(1) is factually insufficient under the "clear and convincing" standard. The earlier version of section 574.106(a) did require this higher burden of proof, stating that the court may issue an order authorizing the administration of one or more classes of psychoactive medication only if the court finds by clear and convincing evidence after the hearing that the patient is under an order for temporary or extended mental health services under section 574.034 or 574.035. Act

of May 24, 1995, 74th Leg., R.S., ch. 770, § 12, 1995 Tex. Gen. Laws 4015, 4019 (amended 2005) (current version at TEX. HEALTH & SAFETY CODE ANN. § 574.106(a)-(a–1) (Vernon Supp.2006)); *see also* TEX. HEALTH & SAFETY CODE ANN. § 574.034 (Vernon 2005), § 574.035. The current version requires clear and convincing evidence only in the second part of the statutory requirements for an order authorizing psychoactive medication. TEX. HEALTH & SAFETY CODE ANN. § 574.106(a–1)(1).

the issue in consideration and clearly state why the finding is factually insufficient or is so against the great weight and preponderance as to be manifestly unjust, why it shocks the conscience, or why it clearly demonstrates bias. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986) (op. on reh'g). Further, our opinion must state in what regard the contrary evidence greatly outweighs the evidence in support of the finding. *Id.; see also Lofton v. Tex. Brine Corp.*, 720 S.W.2d 804, 805 (Tex.1986). If the court of appeals sustains an issue because the evidence is factually insufficient, it must reverse the judgment of the trial court and remand for new trial. *Glover v. Tex. Gen. Indem. Co.*, 619 S.W.2d 400, 401–02 (Tex.1981) (opinion refusing writ n.r.e.). This court has no jurisdiction to render judgment based upon an insufficient evidence issue or point. *B.J. Valve & Fitting Co. v. Elliott Valve Repair Co.*, 679 S.W.2d 1, 1 (Tex.1984).

■ The State first asserts that section 574.106(a)(1)'s requirement that the patient be under a court order to receive inpatient mental health services "is more jurisdictional than evidentiary, and the State therefore is not required to present any evidence of such an order." But while the statute does not place a burden on the State to present such evidence, the evidence at trial still must reflect that this statutory condition is met before applying section 574.106(a–1) and (b). TEXAS HEALTH & SAFETY CODE ANN. § 574.106(a–1), (b). The statutory language requires that for the trial court to order the psychoactive medication, the patient must be under a court order to receive inpatient mental health services.[9] *Id.* § 574.106(a)(1); *F.M.*, 183 S.W.3d at 500.

The State also claims that the evidence presented at the hearing and contained in the judicially noticed documents was factually sufficient to show that Appellant was under a court order to receive inpatient mental health services. Specifically, the State asserts that a decision regarding the administration of medications under section 574.106 may be based on the testifying doctor's application.

■ Under the Texas Rules of Evidence, a judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. TEX.R. EVID. 201(b). The Texas Rules of Evidence apply to proceedings involving court-ordered mental health services to the extent they are not inconsistent with this subtitle of the Texas Health and Safety Code. TEX. HEALTH & SAFETY CODE ANN. § 574.031(e). A court may take judicial notice of its own files, but it cannot take judicial notice of the truth of any allegations contained in its records. *Barnard v. Barnard*, 133 S.W.3d 782, 789 (Tex.App.-Fort Worth 2004, pet. denied). It is appropriate for a court to take judicial notice of a file in order to show that the documents in the file are a part of the court's files, that they were filed with the court on a certain date, and that they were before the court at the time of the hearing. *See Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 660 (Tex.1995) (stating that pleadings are not competent evidence, even if sworn or verified) *and Trimble v. Tex. Dep't of Protective & Regulatory Servs.*, 981 S.W.2d 211, 215 (Tex.

---

9. The alternative is for the patient to be in custody awaiting trial in a criminal proceeding after being ordered to receive inpatient mental health services during the six months preceding the hearing for an order to authorize psychoactive medication. *Id.* § 574.106(a)(2). This alternative is not applicable to these facts.

App.-Houston [14th Dist.] 1998, no pet.) (approving judicial notice by a trial court of its own records in matters that are generally known, easily proven, and not reasonably disputed).

Even assuming, without deciding, that the trial court could take judicial notice of the contents of a sworn application filed under section 574.106, there would still be factually insufficient evidence here to show that Appellant was under an order for mental health services.[10] Here, Dr. Ahmed's sworn application states that "[t]he patient is under an order for temporary *or* extended mental health services under section 574.034 [*or*] 574.035 *or* an application for court-ordered mental health services under section 574.034 *or* 574.035 has been filed for the patient." [Emphasis added]. Judicial notice can be taken of the fact that the application was made, but even if it were appropriate to take judicial notice of any allegations contained within the application, Dr. Ahmed's statement above provides no verifiable fact for the trial court to find; it makes no definite assertion that could be readily ascertained. Instead, it merely lists alternatives.

Other evidence that the State cites to bolster its factual sufficiency argument are various remarks made at the psychoactive medications hearing. Dr. Ahmed made mention of a "commitment," in his testimony, however, there is no information in the record that elaborates or explains to what he referred.[11] Dr. Ahmed also testified that the medications sought in the order would "help [C.S.] to get discharged from the hospital" and that if she improved through the medications, "we would be able to transfer her there to outpatient care in the less restrictive setting." No direct reference is made to Appellant being under an order for mental health services.[12]

If there had been an order for mental health services under any of the sections listed in Dr. Ahmed's statement in the application, and had the order been pres-

---

10. *See, e.g., In re E.T.,* 137 S.W.3d 698, 699–700 (Tex.App.-San Antonio 2004, no pet.) (stating that nothing in the Texas Health and Safety Code authorizes a judge to base his best interest finding under section 574.106(b) on the application for an order to authorize psychoactive medication). *Cf. In re R.S.C.,* 921 S.W.2d 506, 508 (Tex.App.-Fort Worth 1996, no pet.) (involving both a judgment for court-ordered temporary inpatient mental health services and an order to authorize the administration of psychoactive medication). At R.S.C.'s psychoactive medications hearing, the court did take judicial notice of the contents of the file but granted the order based on all the evidence, which included testimony. *Id.* at 510–11. In the separate judgment on court-ordered temporary mental health services, the court made its findings based upon the certificates of medical examination for mental illness. *Id.* at 510. Section 574.034(f) permits a court to make such findings. TEX. HEALTH & SAFETY CODE ANN. § 574.034(f).

11. His statement was, with regard to placing seven-day limitations on some of the medi-

cation, that he did this "in the feeling that she has on the 13th of 2006, for the commitment, there was some procedural reasons that medication hearing was not conducted." This statement is too vague to determine what he meant.

In the trial court's preliminary findings checklist, psychoactive medication was the only topic addressed although there are boxes to check beside "temporary commitment" and "extended commitment" in addition to subcategories describing the types of commitment available under each.

12. The State also argues that Appellant made no assertion at trial that she was not subject to court-ordered mental health services. However, a party may raise complaints about the factual sufficiency of the evidence in a nonjury trial for the first time on appeal. TEX.R. CIV. P. 324(a)-(b); TEX.R.APP. P. 31(d); *Betts v. Reed,* 165 S.W.3d 862, 867 (Tex.App.-Texarkana 2005, no pet.); *Regan v. Lee,* 879 S.W.2d 133, 135–36 (Tex.App.-Houston [14th Dist.] 1994, no writ).

ent in the trial court's file, its presence would then be judicially noticeable even if the facts contained therein were not. *See Barnard,* 133 S.W.3d at 789. Instead, the order, if any, and the extensive documentation required to obtain it, are conspicuous only by their absence.[13] Therefore, we sustain Appellant's first issue because the evidence, testimonial or otherwise, is factually insufficient to prove that she was under a court order to receive inpatient mental health services. Any court order to receive inpatient mental health services under section 574.106(a)(1) was not in the file, nor was it directly addressed at the hearing. And without evidence sufficient for a finding that Appellant was under a court order to receive inpatient mental health services, the court could not then address the requirements of section 574.106(a–1)(1) and (b). TEX. HEALTH & SAFETY CODE ANN. § 574.106(a–1)(1), (b).

Although we sustain Appellant's first issue, which grants her a reversal and remand for a new trial, we must still address the legal sufficiency portion of Appellant's second issue, because if we sustain this contention, we would be required to render judgment in her favor.

## LEGAL SUFFICIENCY UNDER SECTION 574.106(a–1)(1), (b)

█ In her second issue, Appellant complains that the trial court erred by authorizing the administration of psychoactive medications to her because the State failed to prove by clear and convincing evidence that she lacked the capacity to make a decision regarding the administration of the proposed medications under section 574.106(a–1)(1) of the Texas Health and Safety Code and that treatment with the proposed medications was in her best interest based on the statutory factors set forth in section 574.106(b). The State counters that the evidence at trial was legally sufficient for the trial court to issue its order authorizing psychoactive medication to Appellant.

Clear and convincing evidence is that measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. TEX. FAM.CODE ANN. § 101.007 (Vernon 2002); TEX. CIV. PRAC. & REM.CODE ANN. § 41.001(2) (Vernon Supp.2006); *Transp. Ins. Co. v. Moriel,* 879 S.W.2d 10, 31 (Tex.1994). This intermediate standard falls between the preponderance standard of civil proceedings and the reasonable doubt standard of criminal proceedings. *In re G.M.,* 596 S.W.2d 846, 847 (Tex.1980); *State v. Addington,* 588 S.W.2d 569, 570 (Tex. 1979). While the proof must weigh heavier than merely the greater weight of the credible evidence, there is no requirement that the evidence be unequivocal or undisputed. *Addington,* 588 S.W.2d at 570.

This higher burden of proof elevates the appellate standard of legal sufficiency review. *Diamond Shamrock Ref. Co. v. Hall,* 168 S.W.3d 164, 170 (Tex.2005); *Sw. Bell Tel. Co. v. Garza,* 164 S.W.3d 607, 622, 625 (Tex.2004). In reviewing the evidence for legal sufficiency, we must determine whether the evidence is such that a fact-

---

**13.** To hold a hearing on an application for court-ordered mental health services, section 574.009 requires that there be on file with the court "at least two certificates of medical examination for mental illness completed by different physicians each of whom has examined the proposed patient during the preceding 30 days." TEX. HEALTH & SAFETY CODE ANN. § 574.009(a). The certificate must be sworn to, dated, and signed by the examining physician and must include a significant amount of information about diagnosis and treatment. *Id.* § 574.011(a)(1)-(7), (b). The certificate must include the detailed reason for each of the examining physician's opinions. *Id.* § 574.011(e).

finder could reasonably form a firm belief or conviction that its finding was true. *Hall,* 168 S.W.3d at 170; *Garza,* 164 S.W.3d at 627. We must review all the evidence in the light most favorable to the finding. *Hall,* 168 S.W.3d at 170; *Garza,* 164 S.W.3d at 627. This means that we must assume that the fact-finder resolved any disputed facts in favor of its finding if a reasonable fact-finder could have done so. *Hall,* 168 S.W.3d at 170; *Garza,* 164 S.W.3d at 627. We must also disregard all evidence that a reasonable fact-finder could have disbelieved. *Hall,* 168 S.W.3d at 170; *Garza,* 164 S.W.3d at 627. We must consider, however, undisputed evidence even if it is contrary to the finding. *City of Keller v. Wilson,* 168 S.W.3d 802, 817 (Tex.2005); *Hall,* 168 S.W.3d at 170. That is, we must consider evidence favorable to the finding if a reasonable fact-finder could, and disregard evidence contrary to the finding unless a reasonable fact-finder could not. *City of Keller,* 168 S.W.3d at 827.

Section 574.106(a–1)(1) states that

[t]he court may issue an order under this section only if the court finds by clear and convincing evidence after the hearing that the patient lacks the capacity to make a decision regarding the administration of the proposed medication and treatment with the proposed medication is in the best interest of the patient;

Tex. Health & Safety Code Ann. § 574.106(a–1)(1). "Capacity" in this context means the patient's ability to understand the nature and consequences of a proposed treatment, including the benefits, risks, and alternatives therefrom, and to make a decision whether to undergo that treatment. *Id.* § 574.101(1)(A),(B). Section 574.106(b) lists the items a court may consider to determine that treatment is in the patient's best interests:

(1) the patient's expressed preferences regarding treatment with psychoactive medication;

(2) the patient's religious beliefs;

(3) the risks and benefits, from the perspective of the patient, of taking psychoactive medication;

(4) the consequences to the patient if the psychoactive medication is not administered;

(5) the prognosis for the patient if the patient is treated with psychoactive medication;

(6) alternative, less intrusive treatments that are likely to produce the same results as treatment with psychoactive medication; and

(7) less intrusive treatments likely to secure the patient's agreement to take the psychoactive medication.

*Id.* § 574.106(b).

Dr. Ahmed testified that Appellant lacked the capacity to make a decision regarding the administration of her prescribed medications and had refused to take them voluntarily. He testified that while on these medications, Appellant had not required restraint seclusion and that she could be put in a less restrictive setting if she continued to show progress with the medications. Appellant disagreed that the medications were in her best interest and testified that she would prefer that they be discontinued because they made it "a little hard to breathe." After observing and listening to testimony from both Dr. Ahmed and Appellant during the hearing, the trial judge could have reasonably formed a firm belief or conviction that Appellant lacked the ability to understand the nature and consequences of taking the medications or to make a decision regard-

ing their administration.[14]  *Id.* §§ 574.106(a–1)(1), 574.101(1)(A),(B); *See Hall*, 168 S.W.3d at 170, *and Garza*, 164 S.W.3d at 627.

Appellant made clear her preference not to take the medications and indicated that she did not consider the benefits from taking the medication to outweigh the risks.[15]  Her religious beliefs were not addressed.  Dr. Ahmed testified that Appellant suffers from delusions, but if treated with the medications, she might benefit from a better quality of life and that her prognosis under treatment was positive.  According to his testimony, the alternative to the court-ordered medication was electroconvulsive therapy.  Appellant did not seek a reduction in the medications, as a less intrusive treatment, but rather a complete discontinuation.

It is undisputed that Appellant has a serious mental health condition for which she has been treated by Dr. Ahmed at the North Texas State Hospital.  Although Appellant disputed Dr. Ahmed's testimony about her delusions, there is no requirement that the evidence be unequivocal or undisputed in order to be clear and convincing.  *Addington*, 588 S.W.2d at 570.  Based on the testimony presented by both Dr. Ahmed and Appellant at the hearing and viewed in the light most favorable to the finding, the trial judge could have reasonably formed a firm belief that Appellant both lacked the capacity to make a decision regarding the administration of the proposed treatment and that the pro-

posed medication was in her best interest.  We overrule Appellant's second issue.

## CONCLUSION

Having sustained only Appellant's first issue, we reverse the trial court's judgment and remand the case for further proceedings.  *See* TEX.R.APP. P. 43.2(d).

---

**14.** There were several places in the record of Appellant's testimony where she either did not answer or answered only after being prompted.  Her answers were also occasionally disjointed.  In response to a question about whether she always took the medications that she was supposed to take, she responded that "[b]ut it was—it made me—

it—then it made me real—very, very sick, because it hurt—it hurt my heart."

**15.** She stated that the medications were making her sluggish, were hard on her heart, made it more difficult to breathe through her nose, and that she could not sleep with the psychotropic drugs.  She disputed making delusional statements.