### The STATE of Texas for the best Interest and Protection of C.G.

**Nos. 05–12–00373–CV, 05–12–00374–CV.**

Court of Appeals of Texas, Dallas.

July 11, 2012.

Douglas Alan Barnes, Dallas, TX, for Appellant.

Craig Watkins, Dallas County District Attorney, Dallas, TX, for State.

Before Chief Justice WRIGHT and Justices FRANCIS and LANG–MIERS.

## OPINION

Opinion By Chief Justice WRIGHT.

C.G. appeals from a judgment of commitment for temporary inpatient mental health services (no. 05–12–00374–CV) and an order to administer psychoactive medication (no. 05–12–00373–CV). In the involuntary commitment case, C.G. contends that the evidence is legally and factually

insufficient to support a finding by clear and convincing evidence that as a result of mental illness: (1) she was likely to cause serious harm to herself; (2) she was likely to cause serious harm to others; and (3) she was unable to provide for her basic needs and unable to make a rational and informed decision as to whether or not to submit to treatment. In the medication case, C.G. contends that the evidence is legally and factually insufficient to support a finding by clear and convincing evidence that: (1) she lacked the capacity to make a decision regarding the administration of the proposed psychoactive medication; and (2) it was in her best interest to have treatment with the proposed psychoactive medication. We overrule C.G.'s issues and affirm both the trial court's judgment of involuntary commitment and the order to administer psychoactive medication.

### Background

On February 16, 2012, C.G. was living and taking care of her elderly mother at Treemont, a nursing home/rehabilitation center. When C.G. refused to permit the social workers to enter the residence for their scheduled visit with her mother, the police were called. The police observed C.G.'s erratic behavior when they arrived and transported her to Green Oaks Hospital. After examining C.G., Dr. Joel Holiner diagnosed her with psychotic disorder, not otherwise specified. Green Oaks filed an application for temporary commitment and an application for an order to administer psychoactive medication. On March 8, 2012, the trial court conducted a hearing on both applications and granted the requested relief. C.G. timely appealed both the commitment judgment and the order to administer psychoactive medication.

### Standard of Review

■ The burden of proof for an involuntary commitment is clear and convincing evidence. TEX. HEALTH & SAFETY CODE ANN. § 574.034(a) (West 2010). The same standard applies to an order to administer psychoactive medication. *A.S. v. State,* 286 S.W.3d 69 (Tex.App.-Dallas 2009, no pet.). Clear and convincing evidence is that "degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *State v. Addington,* 588 S.W.2d 569, 570 (Tex.1979) (per curiam). Furthermore, as a result of the heightened burden of proof, the court will also apply a heightened standard of review. *In re C.H.,* 89 S.W.3d 17, 25 (Tex.2002). In reviewing a legal sufficiency claim, we examine all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.F.C.,* 96 S.W.3d 256, 266 (Tex.2002). Likewise, in reviewing a factual sufficiency claim, we must consider the evidence that the fact finder could reasonably have found to be clear and convincing and then determine whether based on the entire record, the fact finder could reasonably form a firm conviction or belief that the allegations in the petition were proven. *Id.*

### Order of Involuntary Commitment

■ A trial court may order a patient to receive temporary inpatient mental health services if the judge finds from clear and convincing evidence, that the patient is mentally ill and at least one of three criteria results from that mental illness. TEX. HEALTH & SAFETY CODE ANN. § 574.034(a) (West 2010). The three criteria are: (1) the patient is likely to cause serious harm to herself; (2) the patient is likely to cause serious harm to others; or (3) the patient is suffering severe and abnormal mental, emotional, or physical distress, is deteriorating in her ability to function indepen-

dently, and is unable to make a rational and informed decision as to whether or not to submit to treatment. Tex. Health & Safety Code Ann. § 574.034(a)(2)(A), (B) & (C)(i)-(iii) (West 2010). The specific statutory requirements for meeting this burden are expert testimony and, unless waived, evidence of a recent overt act or continuing pattern of behavior that tends to confirm the likelihood of harm to the patient/others or the patient's distress and deterioration of the patient's ability to function. Tex. Health & Safety Code Ann. § 574.034(d) (West 2010).

The trial court found in this case that all three criteria for committing a mentally ill patient were met. In three issues, C.G. contends the evidence is legally and factually insufficient to support the trial court's findings. At the commitment hearing, Dr. Holiner, physician from Green Oaks, testified that C.G. was brought to Green Oaks Hospital because she did not allow the social workers into the residence to see her mother. C.G. physically fought with them. Because of the incident, the police were called. Due to her overtly psychotic state when the police officers arrived, they took C.G. to Green Oaks for an evaluation. After examining her, Dr. Holiner diagnosed her with psychotic disorder, not otherwise specified. Dr. Holiner testified that when C.G. was brought to the emergency room at Green Oaks, she was psychotic, delusional, and disorganized. He testified that C.G. had beliefs that the police gang raped her, that the doctors were involved in harming her, and that they knew about the gang rape. When asked why she would not allow the social workers to see her mother, C.G. responded that she knew what she was doing because she was both a doctor and a lawyer. She also believes that she has Lyme disease that can be manifested as a psychiatric problem, that there is nothing wrong with her, that she does not need to be at Green Oaks, and

that it is all just a conspiracy. C.G. was tested for Lyme disease, and the test result was negative. C.G.'s sister reported that C.G. has a long history of mental illness, including a long history of recurrent hospitalizations, noncompliance with medications, recurrence of illness, and poor family ties with the exception of her mother.

Dr. Holiner testified that, in his opinion, C.G. is likely to cause harm to herself because she has shown very dangerous behaviors at Green Oaks. She came in with no facial injuries, and within a day had a severely injured left eye, and was threatening to smash her head against the wall. He further testified that she is likely to cause harm to others because she interfered with the care of her mother, and said that she was taking her mother's medication. As a consequence, her mother's condition had deteriorated. He testified that C.G. is deteriorating in her ability to function independently, and that she is not able to make a rational and informed decision as to whether to submit to treatment. In Dr. Holiner's opinion, it would be in C.G.'s best interest to receive inpatient treatment at Green Oaks at this time, and that there are no less restrictive alternatives available.

C.G. also testified at the commitment hearing. She testified that she does not think she has a mental illness, that she has never been diagnosed with a mental illness, and has never been treated for mental illness. She claimed her problems were medical, not psychiatric. She testified that she has "something called Hashimoto's Thyroiditis...that can present as looking as psychosis when it's really not." And she testified that she has "late stage neurological Lyme" disease that can manifest as a psychiatric problem. Furthermore, C.G. also rambled about events that happened in the past, such as an assault in

2009, having gas poisoning, and being on disability for a series of car accidents. She denied saying that she was taking medication prescribed for her mother.

Having reviewed the evidence, we conclude that the evidence is legally and factually sufficient to support the trial court's judgment. We overrule C.G.'s three issues in her appeal of the judgment of involuntary commitment.

## Order to Administer Psychoactive Medication

A trial court may issue an order authorizing the administration of one or more classes of psychoactive medications to a patient who is under a court order to receive inpatient mental health services. TEX. HEALTH & SAFETY CODE ANN. § 574.106(a)(1) (West 2010). The court may issue an order if it finds by clear and convincing evidence that the patient lacks the capacity to make a decision regarding the administration of the proposed medication and treatment with the proposed medication is in the best interest of the patient. TEX. HEALTH & SAFETY CODE ANN. § 574.106(a–1)(1) (West 2010). A patient lacks the capacity to make a decision regarding the administration of medication if the patient does not understand the nature of the mental disorder or the necessity of the medication. *A.S. v. State*, 286 S.W.3d at 69; *State ex rel. D.W.*, 359 S.W.3d 383 (Tex.App.-Dallas 2012, no pet.). To determine if treatment is in the best interest of the patient, the court considers several factors: (1) the patient's expressed preferences regarding treatment with psychoactive medication; (2) the patient's religious beliefs; (3) the risks and benefits, from the perspective of the patient, of taking psychoactive medication; (4) the consequences to the patient if the psychoactive medication is not administered; (5) the prognosis for the patient if the patient is treated with psychoactive medication; (6) alternative, less intrusive treatments that are likely to produce the same results as treatments with psychoactive medication; and (7) less intrusive treatments likely to secure the patient's agreement to take the psychoactive medication. TEX. HEALTH & SAFETY CODE ANN. § 574.106(b)(1)-(7) (West 2010).

In two issues, C.G. contends the evidence is legally and factually insufficient to show that she lacked the capacity to make a decision regarding the medication and that treatment with the medication was in her best interest. At the hearing for the order to administer psychoactive medication, Dr. Holiner testified that he wants to administer four classes of medication to C.G.: antidepressants, antipsychotics, anxiolytics, and mood stabilizers. He testified as to both the risks and benefits of the medications, and that he believes the benefits outweigh the side effects for C.G. at this time. He testified that she has agreed to take some of the medications on an intermittent basis, but has not taken the prescribed medications consistently enough to see the full benefit. C.G. sometimes refuses to take the prescribed medications because she claims there is nothing wrong with her and she does not like the side effects of the medications. Dr. Holiner testified that she does not have the capacity to make a decision regarding administration of medication because she has poor judgment as part of her psychiatric illness and does not understand the nature of her illness and the necessity for the medications. He testified that she has not refused to take medications because of her religious faith. Dr. Holiner testified that, without the medication, her prognosis is poor but, with medication, her progress would be fair to maybe good, and that he believes there are no alternatives to the administration of these medications. In Dr. Holiner's opinion, it would be in C.G.'s

best interest to undergo the administration of these medications.

C.G. also testified at the hearing. She testified that if the court orders her to take the medication that she would have to take them. She also testified that what she needs is antibiotics, not antipsychotics. C.G. said that she has left-sided weakness and tremors, as a side effect of the medications.

Having reviewed all the evidence, we conclude that it is legally and factually sufficient to support the trial court's order allowing the administration of psychoactive medications to C.G. We overrule C.G.'s two issues in her appeal of the order to administer psychoactive medication.

We affirm the trial court's judgment of involuntary commitment and the order to administer psychoactive medication.