

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-19-00137-CV

———————————————

IN THE MATTER OF R.W.

On Appeal from County Court at Law No. 2
Wichita County, Texas
Trial Court No. 50468-L-D

Before Sudderth, C.J.; Gabriel and Bassel, JJ.
Memorandum Opinion by Justice Gabriel

## MEMORANDUM OPINION

Appellant R.W. appeals from the county court's order authorizing the Texas Department of Mental Health and Mental Retardation to administer, regardless of R.W.'s refusal, psychoactive medication to restore him to competency. R.W. challenges the sufficiency of the evidence to support the order. We conclude that the evidence was legally and factually sufficient to support the county court's findings, authorizing the involuntary administration of medication.

## I. BACKGROUND

### A. INCOMPETENCY DETERMINATIONS

R.W. was charged with two criminal offenses.[1] On September 24, 2018, R.W.'s attorney filed a motion for the appointment of an expert to examine R.W. for his competency to stand trial. *See* Tex. Code Crim. Proc. Ann. arts. 46B.004–.005, .021. The district court appointed a disinterested expert to examine R.W., and the expert reported to the court that R.W. was incompetent to stand trial. *See id.* art. 46B.025. On November 14, 2018, the district court found R.W. incompetent to stand trial because of mental illness and ordered him committed to a state hospital for 120 days. *See id.* art. 46B.073(a).

---

[1]The charges were for the failure to register as a sex offender and for assaulting a public servant. Tex. Code Crim. Proc. Ann. art. 62.102; Tex. Penal Code Ann. § 22.01(a), (b)(1).

The Texas Department of State Health Services later informed the district court that R.W. had not attained competency and filed two certificates of R.W.'s recent psychiatric examinations, affirming that R.W. was not competent. *See id.* arts. 46B.077(b), .079, .083. Both the State and R.W.'s counsel reviewed the certificates and agreed that R.W. was not competent to stand trial on the pending criminal charges. *See id.* art. 46B.083. The district court found by clear and convincing evidence that R.W. suffered from a mental illness and as a result of that illness, he was

> suffering severe and abnormal mental, emotional or physical distress; [was] experiencing substantial mental or physical deterioration of his ability to function independently, which [was] exhibited by the defendant's inability, except for reasons of indigence, to provide for his basic needs, including food, clothing, health, [or] safety; and, [was] unable to make a rational and informed decision as to submit to treatment.

*See* Tex. Health & Safety Code Ann. § 574.035(a)(1), (2)(C); Tex. Code Crim. Proc. Ann. arts. 46B.083(a), .084(e). On March 22, 2019, the district court concluded that R.W. met the criteria for court-ordered, extended mental-health services and ordered R.W. committed to a state hospital for a period not to exceed twelve months "for further examination and treatment toward the specific objective of attaining competency to stand trial." *See* Tex. Health & Safety Code Ann. § 574.035(h); Tex. Code Crim. Proc. Ann. art. 46B.102. R.W. does not challenge this order on appeal. *See id.* § 574.070(a).

3

## B. ORDER TO ADMINISTER PSYCHOACTIVE MEDICATIONS

On April 15, R.W.'s treating physician filed, on the State's behalf and in a county court at law with probate jurisdiction, an application for an order authorizing psychoactive medications for R.W. *See id.* § 574.104, .106(c); Tex. Gov't Code Ann. § 25.2452. In the application, the physician, Zahida X. Syed, stated that she had diagnosed R.W. with "Schizophrenia, Non-compliance with treatment" and that the administration of four classes of psychoactive medications would be appropriate and in R.W.'s best interest.[2] Syed averred that R.W. verbally and by other indication refused to voluntarily take the recommended medications and that he lacked the capacity to make a medication decision:

> The patient is paranoid, delusional and entitled. He is getting agitated by getting loud, having verbal altercation with staff and using profanity towards his provider. He believes and states that the State [owes] 2,960,00[0] dollars for 37 years of false imprisonment on him. He is refusing to take any psychotropics because of poor insight and judgment.

Syed concluded that with the appropriate medication, R.W. could be restored to competence but could not be if the medications are not administered. The county court appointed an attorney to represent R.W. and set a hearing on the application for April 17. *See* Tex. Health & Safety Code Ann. § 574.105(1)–(4).

---

[2]The requested four classes were antidepressants, antipsychotics, anxiolytics/sedatives/hypnotics, and mood stabilizers. *See* Tex. Health & Safety Code Ann. § 574.101(3).

4

At the hearing, Dr. Charlene Shero, a consulting physician, testified as a qualified expert regarding the State's application.[3] She reviewed R.W.'s medical records and concluded that he was diagnosed with schizoaffective disorder bipolar type, "leaning more towards" schizophrenia, which caused disordered thinking, unstable moods, and an unstable affect. R.W. presented a risk of harm to others, was "extremely explosively angry," and could not reason logically. R.W. refused to take his medications and would only yell and curse if hospital staff tried to discuss it with him. On April 4 when a nurse tried to raise the issue and explain the risks and benefits of the medications, he threatened her "yelling out lewd, sexual, assaultive comments for nearly ten minutes," which "terrified" her. Between March 26 and April 17, R.W. "threatened repeatedly to [anally] rape" a nurse when she asked him to wear appropriate clothing to class; physically threatened another nurse; asked for female staff members' home addresses and cursed when the request was refused; wore a shirt to class on which he had drawn a sexually explicit picture of the teacher; and threatened Shero when she tried to interview him. Shero testified that the recommended medications, with the exception of antidepressants, would decrease R.W.'s aggression and increase the chances he could be restored to competency. But he could not be restored to competency without the medications and would

---

[3]The State and R.W.'s counsel stipulated that Shero was qualified to testify as an expert.

5

eventually hurt someone. Shero stated that there were no alternatives to the recommended medications and that their benefits outweighed any risk to R.W.

R.W. also testified at the April 17 hearing. He stated that he was not dangerous and that he was not refusing to take medications. R.W. also seemed to assert that the hearing was a nurse's retaliation after a dispute over a telephone call. R.W. had drawn a picture of the facts surrounding the telephone call but it, like his testimony, is hard to decipher.

The county court stated at the end of the hearing that the application would be granted: "The Court finds it has jurisdiction. The Court will grant the application as to antipsychotics, anxiolytics, mood stabilizers. I'll tender notice of the Court's decision here in open court and enter an order consistent with this." *See id.* § 574.105(7). The county court also issued a written notification of its determination as required by statute: (1) R.W. "does not have the capacity to make a proper determination regarding the administration of the proposed medication";[4] (2) treatment with antipsychotics, anxiolytics, and mood stabilizers is in R.W.'s best interest; (3) the county court relied on Shero's testimony in making its determinations; (4) the benefits to be obtained by treatment are greater than any risks associated with

---

[4]The county court included in the notification that (1) R.W.'s condition would stabilize or improve and that his quality of life will be better with the requested treatment and (2) R.W. presents a danger to himself or others at the court-ordered treatment facility.

6

the treatment; and (5) "no suitable alternative" to the treatment is available. *See id.*

§ 574.106(g).

In its April 17 order authorizing psychoactive medication, the county court

made several findings:

- The facts alleged in Syed's application were true and correct and supported by clear and convincing evidence.

- R.W. lacked the capacity to make a decision regarding the administration of the medications, and the proposed medications were in R.W.'s best interest.[5]

- A criminal court ordered R.W. to receive inpatient mental-health services, R.W. presented a danger to himself or others in that facility, and the proposed treatment was in R.W.'s best interest.

- The proposed medications were in the proper course of treatment, were in R.W.'s best interest, and R.W. was refusing to voluntarily take the medications.

*See id.* § 574.106(a), (a-1)(1)–(2)(A), (b), (i); *see also id.* § 574.1065.

### C. APPEAL

R.W. appeals from this order and in his sufficiency arguments, attacks the

State's proof that (1) his refusal to take the medications was based on a lack of

capacity, (2) he made any threats of harm during the six months before he arrived at

the treatment facility, (3) medication was in his best interest after considering his

religious beliefs, and (4) medication was in his best interest after reviewing the

associated risks. R.W. additionally challenges the county court's failure to orally

---

[5]The county court did not order antidepressants to be administered as requested in Syed's application.

7

pronounce his best interest, "which is required by statute[] under the patient's rights during this proceeding."

## II. EVIDENTIARY SUFFICIENCY

### A. STANDARD AND SCOPE OF REVIEW

Clear and convincing evidence must support orders authorizing the administration of psychoactive medication. *See id.* § 574.106(a-1). This quantum of proof is that measure or degree of evidence that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *See In re S.P.*, 444 S.W.3d 299, 302 (Tex. App.—Fort Worth 2014, no pet.). While this is more than the mere greater weight of the credible evidence, clear and convincing evidence does not have to be unequivocal or undisputed. *See id.*

In reviewing the evidence for legal or factual sufficiency, we are to determine if the factfinder could form a firm belief or conviction that the challenged finding was true. *See In re M.T.*, Nos. 02-17-00011-CV, 02-17-00012-CV, 2017 WL 1018596, at *5 (Tex. App.—Fort Worth Mar. 16, 2017, no pet.) (per curiam) (mem. op.); *S.P.*, 444 S.W.3d at 302; *cf. In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002) (holding in termination appeal that clear-and-convincing burden of proof at trial means both legal and factual sufficiency appellate reviews determine "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations"). What evidence we may consider to make this determination is dictated by the type of challenge. If legal sufficiency is raised, we consider all of the

8

evidence in the light most favorable to the finding. *See S.P.*, 444 S.W.3d at 302. Regarding a factual-sufficiency challenge, we look to the entire record and consider evidence that the factfinder could reasonably have found to be clear and convincing. *In re K.S.*, No. 11-19-00064-CV, 2019 WL 1841894, at *2 (Tex. App.—Eastland Apr. 25, 2019, no pet.) (mem. op.) (citing *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). But the factfinder is the sole arbiter of the credibility and weight of the evidence, which we may not second-guess. *See S.P.*, 444 S.W.3d at 302.

## B. "THE STATE . . . FAILED TO PROVE MANY ELEMENTS REQUIRED TO FORCIBLY ADMINISTER MEDICATIONS. . . ."

For a trial court to grant an application for the administration of psychoactive medication, the State must prove by clear and convincing evidence that the patient is in a class of patients eligible for such an order and that the patient meets the statutory criteria. *See* Tex. Health and Safety Code Ann. § 574.106(a)–(a-1). R.W. does not dispute that he "was under a court order to receive inpatient mental health services"; thus, he was eligible for an order authorizing pharmaceutical treatment. *Id.* § 574.106(a)(1).

The State has several statutory options to prove that a court is authorized to order the administration of psychoactive medications to an eligible patient. One way is by proving that "the patient lacks the capacity to make a decision regarding the administration of the proposed medication and treatment with the proposed medication is in the best interest of the patient." *Id.* § 574.106(a-1)(1); *see, e.g.*, *In re*

9

*A.S.K.*, No. 02-13-00129-CV, 2013 WL 3771348, at *3 (Tex. App.—Fort Worth July 18, 2013, no pet.) (mem. op.) ("Although the trial court authorized the medication under both section 574.106(a-1)(1) and section 574.106(a-1)(2), sufficient evidence of either would support the trial court's order.").

### 1. Capacity

R.W. first asserts that the evidence was legally and factually insufficient to support the county court's finding that he did not have the capacity to make medical decisions. His argument focuses on Shero's testimony that R.W. could make a decision but that it would not be reasoned or logical. R.W. extrapolates from this testimony that Shero believed he "could make his own decisions, she just felt he made the wrong ones."

Capacity is defined as an ability to "understand the nature and consequences of a proposed treatment, including the benefits, risks, and alternatives to the proposed treatment" and to "make a decision whether to undergo the proposed treatment." Tex. Health & Safety Code Ann. § 574.101(1). Shero testified that R.W. could make decisions but that because of his diagnosed mental illness, those decisions were based on disordered thinking, unstable moods, explosive anger, paranoia, and a "lack of logical reasoning." And she testified that his decision to refuse the recommended medications was not "a real decision so much as a demand." She recounted that some of his violent outbursts at the hospital were directed at staff members who tried to discuss his treatment plan with him, including its risks and benefits. He refused to

10

talk about it at all. Shero stated, however, that the benefits of the treatment outweighed the side effects. No lesser means would be effective to get R.W. to take the medications, which are the only way to restore R.W. to competency. R.W.'s testimony did not rebut this evidence. He mainly recounted his belief that a nurse's actions regarding another patient's need to make a phone call were part of a conspiracy directed at him in retaliation for his refusal.

Deferring to the county court's credibility determinations and considering the evidence in the appropriate light, we conclude that this evidence was legally and factually sufficient to allow the county court to have formed a firm belief or conviction that R.W. did not have the capacity to make a decision regarding the administration of the proposed medication. *See, e.g.*, *S.P.*, 444 S.W.3d at 305; *A.S. v. State*, 286 S.W.3d 69, 73 (Tex. App.—Dallas 2009, no pet.); *In re C.S.*, 208 S.W.3d 77, 84 (Tex. App.—Fort Worth 2006, pet. denied); *State ex rel. D.O.*, No. 12-05-00274-CV, 2006 WL 475459, at *3–4 (Tex. App.—Tyler Feb. 28, 2006, no pet.) (mem. op.); *State ex rel. A.R.F.*, No. 12-03-00294-CV, 2004 WL 1123832, at *3 (Tex. App.—Tyler May 19, 2004, no pet.) (mem. op.); *In re S.E.W.*, Nos. 14-02-00602-CV, 14-02-00603-CV, 2002 WL 31599910, at *3 (Tex. App.—Houston [14th Dist.] Nov. 21, 2002, no pet.) (not designated for publication).

## 2. Best Interest

R.W. also challenges the sufficiency of the evidence to support the finding that the treatment would be in his best interest. He relies on the statutory factors that the

county court was required to consider in making its best-interest finding and argues that the county court had insufficient evidence of two of the factors: (1) "the patient's religious beliefs" and (2) "the risks and benefits,[6] from the perspective of the patient, of taking psychoactive medication." Tex. Health & Safety Code Ann. § 574.106(b)(2)–(3).

The nature of involuntary treatment means that it is against the wishes of a patient. Even though the trial court is required to consider the patient's preferences and beliefs, it is not required to defer to them. *See State ex rel. C.L.*, No. 12-18-00056-CV, 2018 WL 5961415, at *4 (Tex. App.—Tyler Nov. 14, 2018, no pet.) (mem. op.). No evidence rebutted Shero's testimony, supported by R.W.'s medical records, that R.W.'s mental illness prevented him from making a rational decision about medication. And R.W. did not voice any religious objections to the treatment, only his belief that the medications were part of a retaliatory conspiracy. *See id.* Similarly, Shero testified that R.W. refused to discuss the risks and benefits of the proposed treatment plan, resulting in a violent outburst against two staff members, and R.W. did not address the risks or benefits in his testimony. We presume that the county court gave any evidence of R.W.'s preferences and beliefs due consideration. *See id.*; *cf. C.S.*, 208 S.W.3d at 84 (finding evidence legally sufficient to support best-interest finding even though patient did not address her religious beliefs); *In re R.S.C.*, 921

---

[6]R.W. does not challenge the sufficiency of the evidence to show the benefits of the proposed treatment plan.

12

S.W.2d 506, 514 (Tex. App.—Fort Worth 1996, no pet.) (finding trial court complied with section 574.106(b) even though religious beliefs were not considered because patient offered no evidence of her beliefs).

Accordingly, we conclude that the evidence was legally and factually sufficient to allow the county court to have formed a firm belief or conviction that treatment with the proposed medication was in R.W.'s best interest. *See, e.g., C.L.*, 2018 WL 5961415, at *4; *S.P.*, 444 S.W.3d at 306–07; *State ex rel. C.G.*, 372 S.W.3d 746, 750–51 (Tex. App.—Dallas 2012, no pet.); *C.S.*, 208 S.W.3d at 84.

## C. "THE TRIAL COURT . . . FAILED TO PRONOUNCE PATIENT'S BEST INTERESTS ORALLY. . . ."

In his final argument, R.W. asserts that the county court failed to give him oral notification of the specifics of its best-interest finding, which he argues "weighs against" a finding that the treatment plan was in R.W.'s best interest. *See* Tex. Health & Safety Code Ann. § 574.105(7) (providing oral notification of court's capacity and best-interest notification is a patient right). In support, R.W. cites a case in which our sister court of appeals concluded that the evidence was legally insufficient to support a best-interest finding and noted that the county court had not given an oral, best-interest notification. *In re E.T.*, 137 S.W.3d 698, 700–01 (Tex. App.—San Antonio 2004, no pet.). But in that case, there was a complete absence of evidence that the proposed treatment was in the patient's best interest, which was reflected in the trial court's failure to orally make such a finding. *Id.* As we have already discussed, the

13

evidence here was legally and factually sufficient to show that the proposed treatment was in R.W.'s best interest even though the county court's oral notification did not specifically address R.W.'s capacity and best interest, which can be inferred from the county court's oral granting of the application. *Cf. C.L.*, 2018 WL 5961415, at *4 ("The trial court must consider C.L.'s preferences and beliefs [in its best-interest determination], but . . . [i]t is presumed that the trial court gave C.L.'s preferences and beliefs due consideration."); *R.S.C.*, 921 S.W.2d at 514 (upholding best-interest finding even though religious beliefs were not considered because patient offered no evidence of her beliefs).

Although the trial court did not orally pronounce its capacity and best-interest determinations, which is a statutory patient right, R.W. does not clearly assert a remedy flowing from this deficiency other than to assert it weakens the other evidence supporting the trial court's written best-interest finding. But in determining a patient's best interest in the context of an order to administer psychoactive medication, a trial court must weigh a myriad of considerations that should not be completely discounted based on a failure to orally pronounce them. *See* Tex. Health & Safety Code Ann. § 574.106(b). During the oral notification at the conclusion of the hearing, the county court stated that a written order would be forthcoming. On that same day, the county court signed a written order that clearly found R.W. lacked capacity and the treatment would serve his best interest. These findings were supported by sufficient evidence as we previously discussed. This best-interest evidence supported

14

the county court's order even in the absence of an oral pronouncement, which if error was, at most, harmless. *Cf. S.P.*, 444 S.W.3d at 306 (holding failure to provide patient right to written notification found in section 574.106 was harmless clerical mistake in light of evidence S.P. was able to ascertain what evidence court relied on and to timely appeal the order).

## III.  CONCLUSION

We conclude that the evidence was legally and factually sufficient to allow the county court to have formed a firm belief or conviction that R.W. did not have the capacity to make a decision regarding the administration of the proposed medication and that treatment with the proposed medication was in R.W.'s best interest. *See* Tex. Health & Safety Code Ann. § 574.106(a-1)(1).  Because this ground alone authorized the issuance of an order to administer psychoactive medication, we need not address R.W.'s attacks on the evidence supporting the alternative ground—R.W. presents a danger to himself or others. *See id.* § 574.106(a-1)(2); Tex. R. App. P. 47.1; *A.S.K.*, 2013 WL 3771348, at *3.  Finally, the county court's nonspecific oral notification that the application would be granted does not undermine the evidence supporting the county court's capacity and best-interest findings in the written notification and the order. *See* Tex. Health & Safety Code Ann. § 574.106(a-1), (g).  We overrule R.W.'s issue and affirm the county court's order authorizing psychoactive medication.

15

/s/ Lee Gabriel

Lee Gabriel
Justice

Delivered: June 27, 2019