

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-13-00031-CV

| | | |
|---|---|---|
| In the Matter of A.K.C. | § | From County Court at Law No. 2 |
| | § | of Wichita County (37566-LR-D) |
| | § | March 14, 2013 |
| | § | Opinion by Chief Justice Livingston |

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was error in the trial court's order. It is ordered that the order of the trial court is reversed, and we render a judgment denying the State's application for an order to authorize the administration of psychoactive medications to appellant A.K.C.

It is further ordered that the State of Texas, appellee, shall pay all of the costs of this appeal, for which let execution issue.

SECOND DISTRICT COURT OF APPEALS

By_____
Chief Justice Terrie Livingston


## NO. 02-13-00031-CV

IN THE MATTER OF A.K.C.

----------

FROM COUNTY COURT AT LAW NO. 2 OF WICHITA COUNTY

----------

## MEMORANDUM OPINION[1]

----------

In one issue that concerns the legal and factual sufficiency of the evidence presented in the trial court, appellant A.K.C. appeals the trial court's order authorizing the forced administration of psychoactive medication to him. We reverse the trial court's order and render a judgment for appellant.

## Background Facts

In August 2012, a McLennan County district court entered an order under article 46C.261 of the code of criminal procedure that required appellant's

---

[1]*See* Tex. R. App. P. 47.4.

treatment in an inpatient mental health facility for one year.[2]  In its order, the district court found, among other facts, that as a result of appellant's mental illness, he was likely to cause serious harm to others and was unable to make a rational and informed decision about whether to submit to treatment.

On January 8, 2013, Dr. James Boger filed an application in a Wichita County court for an order authorizing the administration of psychoactive medications to appellant.  Dr. Boger's application referred to the August 2012 order for inpatient mental health services and stated that appellant had a mood disorder, that his best interest required him to take several psychoactive medications, and that he lacked the capacity to decide whether to take the medications.  The trial court appointed counsel to represent appellant and held a hearing on Dr. Boger's application on January 16, 2013.

Dr. Boger did not attend the hearing.  Instead, two witnesses—appellant and Dr. Jack Tomlinson—gave brief testimony at the hearing.[3]  After appellant conceded that Dr. Tomlinson is an expert in the field of psychiatry, Dr. Tomlinson testified that appellant was "apparently" a patient in the mental health facility's

---

[2]*See* Tex. Code Crim. Proc. Ann. art. 46C.261 (West 2006) (setting forth conditions for continuing the commitment to an inpatient mental health facility of a criminal defendant who has been found not guilty of an offense by reason of insanity); *see also id. arts.* 46C.156–.158, .251–.256 (West 2006).  Documents in the clerk's record state that appellant was charged with capital murder but was acquitted of that offense by reason of insanity.  The August 2012 order was an extension of appellant's previous inpatient commitment.

[3]The reporter's record in this appeal comprises nineteen pages, and only thirteen of those pages include testimony from the witnesses.

criminal unit; that "as far as [Dr. Tomlinson knew]," appellant was under a court order to receive inpatient mental health services; and that appellant had been accused of drowning a child in McLennan County, which precipitated his inpatient treatment. Dr. Tomlinson testified that he did not know what symptoms of mental illness appellant was exhibiting at the time of the hearing because he was not appellant's physician; nonetheless, Dr. Tomlinson testified that he was asking the court to allow the forced administration of antipsychotics, antidepressants, mood stabilizers, and anti-anxiety pills to appellant. When the State's counsel asked Dr. Tomlinson why those classes of medication were appropriate for appellant, he said, "He's been on Depakote before. He's been on Risperdal. He's been on antidepressants anyway. The usage of anti-anxiety medication would be just to relieve his anxiety periodically. But he did fairly well, apparently, while he was taking his medicines." According to Dr. Tomlinson, side effects associated with these medications include tardive dyskinesia, dry mouth, dizziness, and constipation.

Dr. Tomlinson testified that therapy alone was insufficient to treat appellant because he had tried to commit suicide before and because he had been hospitalized approximately six times with mental health problems. Dr. Tomlinson explained that appellant was refusing to take medications voluntarily and opined that if the medications were not administered, appellant would "probably stay in the hospital a whole lot longer." When the State questioned Dr. Tomlinson about whether he had considered alternatives to forcing medication, he stated, "I

3

haven't, but Dr. Boger has, apparently." Dr. Tomlinson conceded, however, that he did not "know what [Dr. Boger had] in mind" with regard to medical alternatives to forced medication.

Dr. Tomlinson stated that from "what [he understood]," appellant recognized the risks and benefits to medication, and that "according to records that [Dr. Tomlinson had] read," appellant lacked the capacity to make a decision regarding the administration of medications because he did not "think anything was wrong with him."

On cross-examination by appellant's counsel, Dr. Tomlinson said that he could not remember ever meeting appellant, that he did not know the symptoms of appellant's mental illness, that he was basing his opinions about the need for appellant's medication on "clinical records that [were] in the hospital," and that he did not know Dr. Boger's thoughts about alternative forms of treatment or whether Dr. Boger had attempted to use those alternative forms.

Appellant conceded that he suffered from a mental illness but expressed that his mental health had significantly improved through inpatient treatment. Appellant also testified that he could be treated through therapy or counseling rather than medication and that it violated his religious beliefs to take any kind of medication.

The trial court granted Dr. Boger's application, finding that appellant did not have the capacity to consent to treatment through psychoactive medications, that he had been ordered to receive inpatient mental health services by a criminal

4

court with jurisdiction over him, that he presented a danger to himself or others, and that treatment through medications was in his best interest. Appellant brought this appeal.

## Evidentiary Sufficiency

In his only issue, appellant contends that the evidence is legally and factually insufficient to support the trial court's order authorizing the administration of psychoactive medications to him. Subchapter G of chapter 574 of the health and safety code, concerning the administration of medications to patients under an order for inpatient mental health services, applies to patients who are confined to a mental health facility because they have been acquitted by reason of insanity. *See* Tex. Health & Safety Code Ann. § 574.102 (West 2010); *State ex rel. Best Interest & Prot. of M.H.*, No. 12-06-00042-CV, 2006 WL 2106798, at *1–3 (Tex. App.—Tyler July 31, 2006, no pet.) (mem. op.).

Under Subchapter G, a trial court may issue an order authorizing the administration of psychoactive medications if (1) a patient is under a court order to receive inpatient mental health services by a criminal court that has jurisdiction over the patient, (2) the trial court finds by clear and convincing evidence that the administration of medications is in the patient's best interest, and (3) the trial court finds by clear and convincing evidence that the patient presents a danger to the patient or others in the inpatient mental health facility where the patient is being treated. Tex. Health & Safety Code Ann. § 574.106(a)(1), (a-1)(2)(A) (West 2010). Alternatively, a trial court may authorize the administration of

5

psychoactive medications if (1) a patient is under a court order to receive inpatient mental health services, (2) the trial court finds by clear and convincing evidence that the patient lacks the capacity to make a decision regarding the administration of the medications, and (3) the trial court finds by clear and convincing evidence that treatment with the proposed medications is in the patient's best interest. *Id.* § 574.106(a)(1), (a-1)(1).

Under either scenario, in deciding whether forced administration of psychoactive medications is in a patient's best interest, the trial court must consider the patient's expressed preferences regarding treatment with psychoactive medications; the patient's religious beliefs; the risks and benefits, from the perspective of the patient, of taking psychoactive medications; the consequences to the patient if the psychoactive medications are not administered; the prognosis for the patient if the patient is treated with psychoactive medications; alternative, less intrusive treatments that are likely to produce the same results as treatment with psychoactive medications; and less intrusive treatments that are likely to secure the patient's agreement to take the psychoactive medications. *Id.* § 574.106(b). A trial court may not evaluate the best interest factors based solely on information contained in a doctor's written application for the administration of psychoactive medications. *State ex rel. E.G.*, 249 S.W.3d 728, 731 (Tex. App.—Tyler 2008, no pet.) ("Pleadings, such as the physician's application here, are not evidence that the statutory standard has

been met."); *In re E.T.*, 137 S.W.3d 698, 700 (Tex. App.—San Antonio 2004, no pet.).

Clear and convincing evidence is a "measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *State v. K.E.W.*, 315 S.W.3d 16, 20 (Tex. 2010) (quoting *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979)). "This intermediate standard falls between the preponderance standard of civil proceedings and the reasonable doubt standard of criminal proceedings." *In re C.S.*, 208 S.W.3d 77, 83 (Tex. App.—Fort Worth 2006, pet. denied). To meet the standard, the State must provide more than an expert's bare diagnosis by presenting the factual bases for the expert's opinion. *See State ex rel. E.E.*, 224 S.W.3d 791, 794 (Tex. App.—Texarkana 2007, no pet.) (citing *Mezick v. State*, 920 S.W.2d 427, 430 (Tex. App.—Houston [1st Dist.] 1996, no writ)).

In evaluating the legal sufficiency of the evidence to prove a fact clearly and convincingly, we "review all the evidence in the light most favorable to the finding to determine whether a reasonable factfinder could have formed a firm belief or conviction that the finding was true." *K.E.W.*, 315 S.W.3d at 20 (citing *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)); *State ex rel. D.W.*, 359 S.W.3d 383, 385 (Tex. App.—Dallas 2012, no pet.). We must resolve disputed fact questions in favor of the finding in question if a reasonable factfinder could have done so, and we disregard all contrary evidence unless a reasonable factfinder could not have done so. *K.E.W.*, 315 S.W.3d at 20.

Considering the evidence presented at trial in the light most favorable to the trial court's order, we must conclude that the evidence is legally insufficient to sustain the order because no reasonable factfinder could have determined that the evidence clearly and convincingly proved that forced administration of psychoactive medications is in appellant's best interest. *See* Tex. Health & Safety Code Ann. § 574.106(a-1)(1)–(2). The evidence established that Dr. Tomlinson had never evaluated appellant and was not even sure why appellant was receiving inpatient mental health treatment.[4] Dr. Tomlinson tersely recited, from information in appellant's medical records (including some created almost a year before the hearing), that appellant had a "mood disorder" and had abused cannabis, but Dr. Tomlinson conceded that he was not familiar with appellant's symptoms, explaining, "I'm not his physician." Although Dr. Tomlinson concisely said "Yes" when asked whether appellant would improve if medicated,[5] it seems unlikely that Dr. Tomlinson could provide reliable testimony that appellant's taking psychoactive medication could assist in alleviating

---

[4]For example, Dr. Tomlinson said that as "far as [he knew]," appellant was under a "46B court order" to receive inpatient mental health services. *See* Tex. Code Crim. Proc. Ann. art. 46B.073(b) (West Supp. 2012) (establishing that a defendant who has been found incompetent to stand trial may be temporarily committed to a mental health facility). As explained above, appellant was receiving inpatient mental health services under chapter 46C of the code of criminal procedure, not chapter 46B.

[5]A doctor's conclusory statements are insufficient to support the clear and convincing standard. *See In re E.F.*, No. 02-11-00438-CV, 2011 WL 6141582, at *5 (Tex. App.—Fort Worth Dec. 9, 2011, no pet.) (mem. op.).

8

symptoms of his mental illness that Dr. Tomlinson did not even know about. When the State asked Dr. Tomlinson about what consequences could arise if medications were not administered, Dr. Tomlinson responded only that appellant would "*probably* stay in the hospital a whole lot longer." [Emphasis added.] Similarly, Dr. Tomlinson later said that he "hope[d]" that the medications would improve appellant's quality of life. We conclude that these facts are insufficient to establish that the benefits of giving appellant psychoactive medications outweigh the "multitude" of risks of giving the medications, including tardive dyskinesia.[6] Our conclusion weighs against the trial court's best interest finding. *See* Tex. Health & Safety Code Ann. § 574.106(b)(3)–(5).

Furthermore, although Dr. Tomlinson opined that Dr. Boger had "apparently" considered medical alternatives to medication, Dr. Tomlinson conceded that he did not "know what [Dr. Boger] ha[d] in mind" with respect to such alternatives and admitted that he did not know whether Dr. Boger had ever attempted such alternatives. Dr. Tomlinson's vague testimony about alternative

---

[6]We take judicial notice that the symptoms of tardive dyskinesia are "involuntary movements of the facial muscles and tongue, often persistent, that develop as a late complication of some neuroleptic therapy, more likely with typical antipsychotic agents." Stedman's Medical Dictionary 598 (28th ed. 2006); *see Collini v. Pustejovsky*, 280 S.W.3d 456, 459 n.1 (Tex. App.—Fort Worth 2009, no pet.) ("Tardive dyskinesia is a condition that causes involuntary movement of the limbs, face, or tongue."); *see also* Tex. R. Evid. 201(c), (f) (allowing judicial notice of adjudicative facts to be taken at any stage of the proceeding); *In re S.A.G.*, No. 02-09-00125-CV, 2010 WL 1006301, at *1 n.3 (Tex. App.—Fort Worth Mar. 18, 2010, no pet.) (mem. op.) (taking judicial notice of a medically defined term).

9

treatments also weighs against the trial court's finding that forced psychoactive medications are in appellant's best interest. *See id.* § 574.106(b)(6); *see also State ex rel. E.K.*, No. 12-06-00407-CV, 2007 WL 1492104, at *4 (Tex. App.—Tyler May 23, 2007, no pet.) (mem. op.) (holding that evidence was legally insufficient to support an order under section 574.106 because, in part, it was "not apparent that [the patient's physician] took into account [the patient's] past experiences when he prescribed medication").

Appellant recognized his mental illness during his testimony, expressed that he did not need or want medications, opined that he could address his illness by learning coping skills or attending counseling,[7] and expressed that taking medications, including even Tylenol, violated his religious beliefs. These facts likewise weigh against the trial court's best interest finding. *See* Tex. Health & Safety Code Ann. § 574.106(b)(1)–(2).

Although some facts weigh in favor of the trial court's decision,[8] we cannot conclude, in considering all of the facts in the light most favorable to the trial

---

[7]Appellant testified that in the two months before the hearing, he had been asking for help but "not really getting too much . . . of a reply" from anyone other than his therapist, who visited him only "once a week for an hour."

[8]Dr. Tomlinson stated that appellant had progressed "fairly well, apparently," while taking medications in the past. Dr. Tomlinson also testified that appellant had attempted suicide in the past. However, appellant had not taken medications from November 2012 until January 2013, and although Dr. Tomlinson testified that it "look[ed] like" appellant had begun to "decompensate," Dr. Tomlinson did not provide any details about a negative change in appellant's condition in the two months when he was not taking medication, and there is no

10

court's order, that a reasonable factfinder could have reached a firm conviction or belief that the administration of psychoactive medications to appellant is in his best interest. *See id.* § 574.106(b). There may be adequate reasons for administering psychoactive medications to appellant, but the State did not adequately prove those reasons at trial; instead, it produced the testimony of a doctor who appeared to be mostly unfamiliar with appellant's mental illness and with his particular need for medications. Thus, we hold that the trial court's order is not supported by legally sufficient evidence, and we sustain appellant's only issue. *See K.E.W.*, 315 S.W.3d at 20.

---

evidence that appellant attempted suicide or attempted to harm anyone during that time.

**Conclusion**

Having sustained appellant's issue on the ground that the evidence is legally insufficient to support the trial court's order authorizing the forced administration of psychoactive medications to appellant, we reverse that order and render a judgment denying Dr. Boger's application.[9] *See* Tex. R. App. P. 43.2(c); *E.G.*, 249 S.W.3d at 732.

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; WALKER and MEIER, JJ.

DELIVERED:  March 14, 2013

---

[9]Our rendition of a judgment in appellant's favor on Dr. Boger's application does not affect the propriety of the order authorizing his commitment for inpatient mental health treatment, which he has not appealed from.