02-13-031-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-13-00031-CV

 


 
 
 In
 the Matter of A.K.C.
 
 
 §
  
 §
  
 §
  
 §
  
 
 
 From County Court at Law
 No. 2
  
 of
 Wichita County (37566-LR-D)
  
 March
 14, 2013
  
 Opinion
 by Chief Justice Livingston
 
 


 

JUDGMENT

 

          This
court has considered the record on appeal in this case and holds that there was
error in the trial court’s order.  It is ordered that the order of the trial
court is reversed, and we render a judgment denying the State’s application for
an order to authorize the administration of psychoactive medications to
appellant A.K.C.

It
is further ordered that the State of Texas, appellee, shall pay all of the
costs of this appeal, for which let execution issue.

 

SECOND DISTRICT COURT OF APPEALS 

 

 

 

By_________________________________

    Chief Justice Terrie Livingston

 

 

 

 

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-13-00031-CV

 

 


 
 
 In the Matter of A.K.C.
 
 


 

 

----------

FROM County
Court at Law No. 2 OF Wichita COUNTY

----------

MEMORANDUM
OPINION[1]

----------

          In
one issue that concerns the legal and factual sufficiency of the evidence
presented in the trial court, appellant A.K.C. appeals the trial court’s order
authorizing the forced administration of psychoactive medication to him.  We reverse
the trial court’s order and render a judgment for appellant.

Background Facts

 

          In
August 2012, a McLennan County district court entered an order under article
46C.261 of the code of criminal procedure that required appellant’s treatment in
an inpatient mental health facility for one year.[2] 
In its order, the district court found, among other facts, that as a result of
appellant’s mental illness, he was likely to cause serious harm to others and
was unable to make a rational and informed decision about whether to submit to
treatment.

          On
January 8, 2013, Dr. James Boger filed an application in a Wichita
County court for an order authorizing the administration of psychoactive
medications to appellant.  Dr. Boger’s application referred to the August 2012
order for inpatient mental health services and stated that appellant had a mood
disorder, that his best interest required him to take several psychoactive
medications, and that he lacked the capacity to decide whether to take the
medications.  The trial court appointed counsel to represent appellant and held
a hearing on Dr. Boger’s application on January 16, 2013.

          Dr.
Boger did not attend the hearing.  Instead, two witnesses—appellant and Dr.
Jack Tomlinson—gave brief testimony at the hearing.[3] 
After appellant conceded that Dr. Tomlinson is an expert in the field of psychiatry,
Dr. Tomlinson testified that appellant was “apparently” a patient in the mental
health facility’s criminal unit; that “as far as [Dr. Tomlinson knew],” appellant
was under a court order to receive inpatient mental health services; and that
appellant had been accused of drowning a child in McLennan County, which
precipitated his inpatient treatment.  Dr. Tomlinson testified that he did not
know what symptoms of mental illness appellant was exhibiting at the time of
the hearing because he was not appellant’s physician; nonetheless, Dr.
Tomlinson testified that he was asking the court to allow the forced
administration of antipsychotics, antidepressants, mood stabilizers, and
anti-anxiety pills to appellant.  When the State’s counsel asked Dr. Tomlinson
why those classes of medication were appropriate for appellant, he said, “He’s
been on Depakote before.  He’s been on Risperdal.  He’s been on antidepressants
anyway.  The usage of anti-anxiety medication would be just to relieve his
anxiety periodically.  But he did fairly well, apparently, while he was taking
his medicines.”  According to Dr. Tomlinson, side effects associated with these
medications include tardive dyskinesia, dry mouth, dizziness, and constipation.

          Dr.
Tomlinson testified that therapy alone was insufficient to treat appellant
because he had tried to commit suicide before and because he had been
hospitalized approximately six times with mental health problems.  Dr.
Tomlinson explained that appellant was refusing to take medications voluntarily
and opined that if the medications were not administered, appellant would
“probably stay in the hospital a whole lot longer.”  When the State questioned
Dr. Tomlinson about whether he had considered alternatives to forcing
medication, he stated, “I haven’t, but Dr. Boger has, apparently.”  Dr.
Tomlinson conceded, however, that he did not “know what [Dr. Boger had] in
mind” with regard to medical alternatives to forced medication.

          Dr.
Tomlinson stated that from “what [he understood],” appellant recognized the
risks and benefits to medication, and that “according to records that [Dr.
Tomlinson had] read,” appellant lacked the capacity to make a decision
regarding the administration of medications because he did not “think anything
was wrong with him.”

          On
cross-examination by appellant’s counsel, Dr. Tomlinson said that he could not
remember ever meeting appellant, that he did not know the symptoms of
appellant’s mental illness, that he was basing his opinions about the need for
appellant’s medication on “clinical records that [were] in the hospital,” and
that he did not know Dr. Boger’s thoughts about alternative forms of treatment
or whether Dr. Boger had attempted to use those alternative forms.

          Appellant
conceded that he suffered from a mental illness but expressed that his mental
health had significantly improved through inpatient treatment.  Appellant also
testified that he could be treated through therapy or counseling rather than
medication and that it violated his religious beliefs to take any kind of
medication.

          The
trial court granted Dr. Boger’s application, finding that appellant did not
have the capacity to consent to treatment through psychoactive medications, that
he had been ordered to receive inpatient mental health services by a criminal
court with jurisdiction over him, that he presented a danger to himself or
others, and that treatment through medications was in his best interest.  Appellant
brought this appeal.

Evidentiary
Sufficiency

          In
his only issue, appellant contends that the evidence is legally and factually
insufficient to support the trial court’s order authorizing the administration
of psychoactive medications to him.  Subchapter G of chapter 574 of
the health and safety code, concerning the administration of medications to
patients under an order for inpatient mental health services, applies to
patients who are confined to a mental health facility because they have been
acquitted by reason of insanity.  See Tex. Health & Safety Code Ann.
§ 574.102 (West 2010); State ex rel. Best Interest & Prot. of M.H.,
No. 12-06-00042-CV, 2006 WL 2106798, at *1–3 (Tex. App.—Tyler July 31, 2006, no
pet.) (mem. op.).

          Under
Subchapter G, a trial court may issue an order authorizing the administration
of psychoactive medications if (1) a patient is under a court order to receive
inpatient mental health services by a criminal court that has jurisdiction over
the patient, (2) the trial court finds by clear and convincing evidence that the
administration of medications is in the patient’s best interest, and (3) the
trial court finds by clear and convincing evidence that the patient presents a
danger to the patient or others in the inpatient mental health facility where
the patient is being treated.  Tex. Health & Safety Code Ann. § 574.106(a)(1),
(a-1)(2)(A) (West 2010).  Alternatively, a trial court may authorize the
administration of psychoactive medications if (1) a patient is under a court
order to receive inpatient mental health services, (2) the trial court finds by
clear and convincing evidence that the patient lacks the capacity to make a
decision regarding the administration of the medications, and (3) the trial
court finds by clear and convincing evidence that treatment with the proposed
medications is in the patient’s best interest.  Id. § 574.106(a)(1),
(a-1)(1).

          Under
either scenario, in deciding whether forced administration of psychoactive
medications is in a patient’s best interest, the trial court must consider
the
patient’s expressed preferences regarding treatment with psychoactive
medications; the patient’s religious beliefs; the risks and benefits, from the
perspective of the patient, of taking psychoactive medications; the
consequences to the patient if the psychoactive medications are not
administered; the prognosis for the patient if the patient is treated with
psychoactive medications; alternative, less intrusive treatments that are
likely to produce the same results as treatment with psychoactive medications;
and less intrusive treatments that are likely to secure the patient’s agreement
to take the psychoactive medications.  Id. § 574.106(b).  A trial court
may not evaluate the best interest factors based solely on information
contained in a doctor’s written application for the administration of
psychoactive medications.  State ex rel. E.G., 249 S.W.3d 728, 731 (Tex.
App.—Tyler 2008, no pet.) (“Pleadings, such as the physician’s application
here, are not evidence that the statutory standard has been met.”); In
re E.T., 137 S.W.3d 698, 700 (Tex. App.—San Antonio 2004, no
pet.).

          Clear
and convincing evidence is a “measure or degree of proof which will produce in
the mind of the trier of fact a firm belief or conviction as to the truth of
the allegations sought to be established.”  State v. K.E.W., 315 S.W.3d
16, 20 (Tex. 2010) (quoting State v. Addington, 588 S.W.2d 569, 570
(Tex. 1979)).  “This intermediate standard falls between the preponderance
standard of civil proceedings and the reasonable doubt standard of criminal
proceedings.”  In re C.S., 208 S.W.3d 77, 83 (Tex. App.—Fort Worth 2006,
pet. denied).  To meet the standard, the State must provide more than an
expert’s bare diagnosis by presenting the factual bases for the expert’s
opinion.  See State ex rel. E.E., 224 S.W.3d 791, 794 (Tex. App.—Texarkana
2007, no pet.) (citing Mezick v. State, 920 S.W.2d 427, 430 (Tex. App.—Houston
[1st Dist.] 1996, no writ)).

          In
evaluating the legal sufficiency of the evidence to prove a fact clearly and
convincingly, we “review all the evidence in the light most favorable to the
finding to determine whether a reasonable factfinder could have formed a firm
belief or conviction that the finding was true.”  K.E.W., 315 S.W.3d at 20
(citing In re J.F.C., 96 S.W.3d 256, 266 (Tex. 2002)); State ex
rel. D.W., 359 S.W.3d 383, 385 (Tex. App.—Dallas 2012, no pet.).  We must
resolve disputed fact questions in favor of the finding in question if a
reasonable factfinder could have done so, and we disregard all contrary
evidence unless a reasonable factfinder could not have done so.  K.E.W.,
315 S.W.3d at 20.

          Considering
the evidence presented at trial in the light most favorable to the trial
court’s order, we must conclude that the evidence is legally insufficient to
sustain the order because no reasonable factfinder could have determined that
the evidence clearly and convincingly proved that forced administration of
psychoactive medications is in appellant’s best interest.  See Tex.
Health & Safety Code Ann. § 574.106(a-1)(1)–(2).  The evidence established
that Dr. Tomlinson had never evaluated appellant and was not even sure why
appellant was receiving inpatient mental health treatment.[4] 
Dr. Tomlinson tersely recited, from information in appellant’s medical records
(including some created almost a year before the hearing), that appellant had a
“mood disorder” and had abused cannabis, but Dr. Tomlinson conceded that he was
not familiar with appellant’s symptoms, explaining, “I’m not his physician.”  Although
Dr. Tomlinson concisely said “Yes” when asked whether appellant would improve
if medicated,[5] it seems unlikely that
Dr. Tomlinson could provide reliable testimony that appellant’s taking
psychoactive medication could assist in alleviating symptoms of his mental
illness that Dr. Tomlinson did not even know about.  When the State asked Dr.
Tomlinson about what consequences could arise if medications were not
administered, Dr. Tomlinson responded only that appellant would “probably
stay in the hospital a whole lot longer.”  [Emphasis added.]  Similarly, Dr.
Tomlinson later said that he “hope[d]” that the medications would improve
appellant’s quality of life.  We conclude that these facts are insufficient to
establish that the benefits of giving appellant psychoactive medications
outweigh the “multitude” of risks of giving the medications, including tardive
dyskinesia.[6]  Our conclusion weighs
against the trial court’s best interest finding.  See Tex. Health &
Safety Code Ann. § 574.106(b)(3)–(5).

          Furthermore,
although Dr. Tomlinson opined that Dr. Boger had “apparently” considered
medical alternatives to medication, Dr. Tomlinson conceded that he did not
“know what [Dr. Boger] ha[d] in mind” with respect to such alternatives and
admitted that he did not know whether Dr. Boger had ever attempted such
alternatives.  Dr. Tomlinson’s vague testimony about alternative treatments
also weighs against the trial court’s finding that forced psychoactive
medications are in appellant’s best interest.  See id. § 574.106(b)(6);
see also State ex rel. E.K., No. 12-06-00407-CV, 2007 WL 1492104, at *4
(Tex. App.—Tyler May 23, 2007, no pet.) (mem. op.) (holding that evidence was
legally insufficient to support an order under section 574.106 because, in
part, it was “not apparent that [the patient’s physician] took into account [the
patient’s] past experiences when he prescribed medication”).

          Appellant
recognized his mental illness during his testimony, expressed that he did not
need or want medications, opined that he could address his illness by learning
coping skills or attending counseling,[7] and expressed that taking
medications, including even Tylenol, violated his religious beliefs.  These
facts likewise weigh against the trial court’s best interest finding.  See Tex.
Health & Safety Code Ann. § 574.106(b)(1)–(2).

          Although
some facts weigh in favor of the trial court’s decision,[8]
we cannot conclude, in considering all of the facts in the light most favorable
to the trial court’s order, that a reasonable factfinder could have reached a
firm conviction or belief that the administration of psychoactive medications
to appellant is in his best interest.  See id. § 574.106(b).  There
may be adequate reasons for administering psychoactive medications to
appellant, but the State did not adequately prove those reasons at trial; instead,
it produced the testimony of a doctor who appeared to be mostly unfamiliar with
appellant’s mental illness and with his particular need for medications.  Thus,
we hold that the trial court’s order is not supported by legally sufficient
evidence, and we sustain appellant’s only issue.  See K.E.W., 315 S.W.3d
at 20.

Conclusion

          Having
sustained appellant’s issue on the ground that the evidence is legally
insufficient to support the trial court’s order authorizing the forced
administration of psychoactive medications to appellant, we reverse that order
and render a judgment denying Dr. Boger’s application.[9] 
See Tex. R. App. P. 43.2(c); E.G., 249 S.W.3d at 732.

 

 

 

TERRIE LIVINGSTON
CHIEF JUSTICE

 

PANEL:  LIVINGSTON, C.J.; WALKER and MEIER, JJ.

 

DELIVERED: 
March 14, 2013









[1]See Tex. R. App. P. 47.4.





[2]See Tex. Code Crim.
Proc. Ann. art. 46C.261 (West 2006) (setting forth conditions for continuing
the commitment to an inpatient mental health facility of a criminal defendant
who has been found not guilty of an offense by reason of insanity); see also
id. arts. 46C.156–.158, .251–.256 (West 2006).  Documents in the clerk’s
record state that appellant was charged with capital murder but was acquitted
of that offense by reason of insanity.  The August 2012 order was an
extension of appellant’s previous inpatient commitment.





[3]The reporter’s record in
this appeal comprises nineteen pages, and only thirteen of those pages include
testimony from the witnesses.





[4]For example, Dr. Tomlinson
said that as “far as [he knew],” appellant was under a “46B court order” to
receive inpatient mental health services.  See Tex. Code Crim. Proc.
Ann. art. 46B.073(b) (West Supp. 2012) (establishing that a defendant who has
been found incompetent to stand trial may be temporarily committed to a mental
health facility).  As explained above, appellant was receiving inpatient mental
health services under chapter 46C of the code of criminal procedure, not
chapter 46B.





[5]A doctor’s conclusory
statements are insufficient to support the clear and convincing standard.  See
In re E.F., No. 02-11-00438-CV, 2011 WL 6141582, at *5 (Tex. App.—Fort
Worth Dec. 9, 2011, no pet.) (mem. op.).





[6]We take judicial notice
that the symptoms of tardive dyskinesia are “involuntary movements of the
facial muscles and tongue, often persistent, that develop as a late complication
of some neuroleptic therapy, more likely with typical antipsychotic agents.” 
Stedman’s Medical Dictionary 598 (28th ed. 2006); see Collini v. Pustejovsky,
280 S.W.3d 456, 459 n.1 (Tex. App.—Fort Worth 2009, no pet.) (“Tardive
dyskinesia is a condition that causes involuntary movement of the limbs, face,
or tongue.”); see also Tex. R. Evid. 201(c), (f) (allowing judicial
notice of adjudicative facts to be taken at any stage of the proceeding); In
re S.A.G., No. 02-09-00125-CV, 2010 WL 1006301, at *1 n.3 (Tex. App.—Fort
Worth Mar. 18, 2010, no pet.) (mem. op.) (taking judicial notice of a medically
defined term).





[7]Appellant testified that
in the two months before the hearing, he had been asking for help but “not
really getting too much . . . of a reply” from anyone other than his therapist,
who visited him only “once a week for an hour.”





[8]Dr. Tomlinson stated that
appellant had progressed “fairly well, apparently,” while taking medications in
the past.  Dr. Tomlinson also testified that appellant had attempted suicide in
the past.  However, appellant had not taken medications from November 2012
until January 2013, and although Dr. Tomlinson testified that it “look[ed]
like” appellant had begun to “decompensate,” Dr. Tomlinson did not provide any
details about a negative change in appellant’s condition in the two months when
he was not taking medication, and there is no evidence that appellant attempted
suicide or attempted to harm anyone during that time.





[9]Our rendition of a
judgment in appellant’s favor on Dr. Boger’s application does not affect the
propriety of the order authorizing his commitment for inpatient mental health
treatment, which he has not appealed from.