

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

**NO. 02-14-00209-CV**
**NO. 02-14-00210-CV**

IN THE MATTER OF S.P.

----------

FROM COUNTY COURT AT LAW NO. 2 OF WICHITA COUNTY
TRIAL COURT NOS. 38616-L, 38620-L-D

----------

## OPINION

----------

In one issue in each cause, Appellant S.P. contends that the evidence is legally and factually insufficient to support the trial court's temporary health commitment order and subsequent order authorizing psychoactive medication. Because we hold that the evidence is legally and factually sufficient to support both orders, we affirm both orders.

**Statement of Facts**

In June 2014, Appellant was admitted to North Texas State Hospital (the hospital) after she was found lying naked on the floor of her home; all utilities in

the home had been turned off. She had previously been diagnosed with bipolar disorder and had been a patient at the hospital on and off since she was a teenager. The testifying physician's (the physician's) preliminary diagnosis was schizoaffective disorder, but the physician explained that the two diagnoses are very similar and that after she gained access to more records and background information, she believed that the historical diagnosis of bipolar disorder was the correct diagnosis.

According to the physician, after Appellant's admission to the hospital, she had

> [n]o sleep; she[ was] up pretty much all night every night, dancing and singing. She[ was] nonsensical; when she sp[oke] she[ was] not coherent. She [did not] give any kind of logical explanation of why she [thought] she[ was in the hospital] or even where she [was]. So [the hospital personnel could not] really make any heads or tails of what she[ was] saying.

Appellant also did not appear to process information.

The physician testified that the doctor who had admitted Appellant to the hospital had prescribed lithium, risperdal, and klonopin, as well as therapy, but Appellant refused to cooperate, so the treatment was discontinued. The physician requested the trial court to order antipsychotics, mood stabilizers, sedatives, and possibly antidepressants.

The physician believed that with medication, Appellant would begin sleeping through the night, have normal sleep and wake cycles, be able to communicate with others, be more coherent and logical, and eventually function

2

in an outpatient setting. But the physician believed that without medication, Appellant would probably continue in her current state until her body became exhausted. The physician testified that the benefits and side effects of the medications had been explained to Appellant, and the physician also testified about the side effects psychoactive medications could cause:

> The antipsychotic medications can cause tremors or muscle stiffness. The mood stabilizer, Lithium, has very few side effects, but some people do get tremors, or dry mouth, or excess urination. And the sedative hypnotics can be oversedating, so somebody would be sleeping when you want them to be awake. Those are probably the major side effects.

The physician nevertheless believed that the benefits of the medication outweighed the potential side effects and believed that ordering medication would be in Appellant's best interest. The physician believed that no alternative would likely produce the same results and no less intrusive treatment would likely secure Appellant's agreement to take the psychoactive medications.

The physician also testified that Appellant lacked the capacity to make a decision regarding the administration of medication because there was no evidence that she understood or processed what she heard, and she was incoherent. Even on the day of the hearing, Appellant's counsel told the trial court that when asked whether she wanted to appear at the hearing, Appellant would just "look at [the person] and smile and start singing." The physician testified that she believed that treatment with medication would improve Appellant's quality of life.

3

The trial court mistakenly named the admitting doctor and not the physician as the testifying expert in the "Notification of Court's Determination."

**Standard of Review**

Clear and convincing evidence must support temporary commitment orders and orders authorizing medication.[1] Clear and convincing evidence is that measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.[2] This intermediate standard of proof falls between the preponderance standard of proof in most civil proceedings and the reasonable doubt standard of proof in most criminal proceedings.[3] While the proof must be of a heavier weight than merely the greater weight of the credible evidence, there is no requirement that the evidence be unequivocal or undisputed.[4]

In evaluating the evidence for legal sufficiency, we must determine whether the evidence is such that a factfinder could reasonably form a firm belief

---

[1]Tex. Health & Safety Code Ann. § 574.034(a) (West Supp. 2014), § .106(a-1) (West 2010); *In re P.E.J.*, Nos. 02-13-00099-CV, 02-13-00100-CV, 2013 WL 4121081, at *1, *6 (Tex. App.—Fort Worth Aug. 15, 2013, no pet.) (mem. op.).

[2]Tex. Civ. Prac. & Rem. Code Ann. § 41.001(2) (West 2008); Tex. Fam. Code Ann. § 101.007 (West 2008); *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 137 (Tex. 2012); *State v. K.E.W.*, 315 S.W.3d 16, 20 (Tex. 2010).

[3]*In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980); *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979).

[4]*Addington*, 588 S.W.2d at 570.

or conviction that its finding was true.[5]  We review all the evidence in the light most favorable to the finding.[6]  We resolve any disputed facts in favor of the finding if a reasonable factfinder could have done so.[7]  We disregard all evidence that a reasonable factfinder could have disbelieved.[8]  We consider undisputed evidence even if it is contrary to the finding.[9]  That is, we consider evidence favorable to the finding if a reasonable factfinder could, and we disregard contrary evidence unless a reasonable factfinder could not.[10]  The factfinder, not this court, is the sole judge of the credibility and demeanor of the witnesses.[11]

In evaluating the evidence for factual sufficiency, we determine whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that its finding was true.[12]  If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or

[5]*K.E.W.*, 315 S.W.3d at 20; *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 248 (Tex. 2008) *cert. denied*, 290 S.W.3d 873 (2009).

[6]*Waldrip*, 380 S.W.3d at 138; *Hogue*, 271 S.W.3d at 248.

[7]*K.E.W.*, 315 S.W.3d at 20; *Hogue*, 271 S.W.3d at 248.

[8]*Hogue*, 271 S.W.3d at 248.

[9]*Id.*; *City of Keller v. Wilson*, 168 S.W.3d 802, 817 (Tex. 2005).

[10]*See K.E.W.*, 315 S.W.3d at 20; *Hogue*, 271 S.W.3d at 248.

[11]*In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009).

[12]*In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006).

conviction in the truth of its finding, then the evidence is factually insufficient.[13]

We must not supplant the trial court's judgment with our own.[14] The factfinder is the sole judge of the credibility of witnesses and the weight to be given their testimony.[15]

**Temporary Commitment Order**

Section 574.034 governs orders for temporary mental health services and provides,

   (a)   The judge may order a proposed patient to receive court-ordered temporary inpatient mental health services only if the judge or jury finds, from clear and convincing evidence, that:

       (1)   the proposed patient is mentally ill; and

       (2)   as a result of that mental illness the proposed patient:

          (A)   is likely to cause serious harm to himself;

          (B)   is likely to cause serious harm to others; or

          (C)   is:

             (i)   suffering severe and abnormal mental, emotional, or physical distress;

             (ii)   experiencing substantial mental or physical deterioration of the proposed patient's ability to function independently, which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide

---

[13]*Id.*

[14]*Id.*; *see also Barker v. Eckman*, 213 S.W.3d 306, 314 (Tex. 2006).

[15]*H.R.M.*, 209 S.W.3d at 109; *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

> for the proposed patient's basic needs, including food, clothing, health, or safety; and
>
> (iii) unable to make a rational and informed decision as to whether or not to submit to treatment.
>
> . . . .
>
> (c) If the judge or jury finds that the proposed patient meets the commitment criteria prescribed by Subsection (a), the judge or jury must specify which criterion listed in Subsection (a)(2) forms the basis for the decision.
>
> (d) To be clear and convincing under Subsection (a), the evidence must include expert testimony and, unless waived, evidence of a recent overt act or a continuing pattern of behavior that tends to confirm:
>
> (1) the likelihood of serious harm to the proposed patient or others; or
>
> (2) the proposed patient's distress and the deterioration of the proposed patient's ability to function.
>
> . . . .
>
> (g) An order for temporary inpatient or outpatient mental health services shall state that treatment is authorized for not longer than 90 days. The order may not specify a shorter period.[16]

In its order committing Appellant to the hospital for no more than ninety days, the trial court found that

> [Appellant] is mentally ill and that as result of that mental illness[, Appellant] will[,] if not treated[,] continue to suffer severe and abnormal mental[,] emotional[,] or physical distress and will continue to experience deterioration of [her] ability to function independently[,] which is exhibited by [her] inability except for

---

[16]Tex. Health & Safety Code Ann. § 574.034 (West Supp. 2014).

7

reasons of indigence to provide for [her] basic needs including food[,] clothing[,] health[,] or safety; and is unable to make a rational and informed decision as to whether or not to submit to treatment.

Appellant contends that there is no or insufficient evidence of "a recent overt act or continuing pattern of behavior that tended to confirm a deterioration of [her] ability to function." We disagree. Taken together, Appellant's inability before her admission to the hospital to ensure that she had utilities in the Texas summer, her not sleeping, her dancing and singing "all night[,] every night," her inability to process or communicate in the approximately two weeks between her admission to the hospital and the hearing, and the physician's testimony that Appellant's behaviors left unchecked would exhaust her body amount to evidence from which the trial court could have reasonably formed a firm belief or conviction that she exhibited "a continuing pattern of behavior that tended to confirm . . . [a] deterioration of [Appellant's] ability to function,"[17] whether we view all the evidence in a light favorable to the finding or with due deference to the trial judge.[18] We therefore hold that the evidence is legally and factually sufficient to support the temporary commitment order, and we overrule Appellant's sole issue challenging that order.

---

[17]*See id.* § 574.034(d)(2).

[18]*See Waldrip*, 380 S.W.3d at 138; *Hogue*, 271 S.W.3d at 248; *H.R.M.*, 209 S.W.3d at 108.

8

**Order Authorizing Medication**

Section 574.106(a) of the health and safety code provides in relevant part that the trial "court may issue an order authorizing the administration of one or more classes of psychoactive medication to a patient who . . . is under a court order to receive inpatient mental health services."[19] Subsection (a-1) provides in relevant part that to issue such an order, the trial court must "find[] by clear and convincing evidence after the hearing . . . that the patient lacks the capacity to make a decision regarding the administration of the proposed medication and [that] treatment with the proposed medication is in the best interest of the patient."[20] Subsection (b) provides that in determining the patient's best interest, the trial court shall consider:

(1)    the patient's expressed preferences regarding treatment with psychoactive medication;

(2)    the patient's religious beliefs;

(3)    the risks and benefits, from the perspective of the patient, of taking psychoactive medication;

(4)    the consequences to the patient if the psychoactive medication is not administered;

(5)    the prognosis for the patient if the patient is treated with psychoactive medication;

---

[19]Tex. Health & Safety Code Ann. § 574.106(a) (West 2010).

[20]*Id.* § 574.106(a–1).

9

(6) alternative, less intrusive treatments that are likely to produce the same results as treatment with psychoactive medication; and

(7) less intrusive treatments likely to secure the patient's agreement to take the psychoactive medication.[21]

"'Capacity' means a patient's ability to . . . understand the nature and consequences of a proposed treatment, including the benefits, risks, and alternatives to the proposed treatment; and [to] make a decision whether to undergo the proposed treatment."[22]

Appellant initially challenges the legal and factual sufficiency of the evidence supporting the trial court's finding that she lacked capacity to make a decision regarding the administration of the proposed medication. But the evidence that Appellant was found in June, lying nude on the floor in her Texas home, with all the utilities cut off; she was up "pretty much all night[,] every night" singing and dancing during her approximate two-week stay at the hospital before the hearing; she did not sleep; she demonstrated an inability to process or communicate by speaking nonsensical, incoherent language; and when asked whether she wanted to attend the hearing, she smiled and began singing is such that the trial court could reasonably have formed a firm belief or conviction that Appellant lacked capacity, whether we review all of the evidence in the light most

---

[21] *Id.* § 574.106(b).

[22] *Id.* § 574.101(1).

favorable to the finding[23] or merely show proper deference to the trial court.[24] We therefore hold that the evidence is legally and factually sufficient to support the trial court's finding of incapacity.

Appellant also contends that the evidence is legally and factually insufficient to show that treatment with the proposed medication is in her best interest because no specific medication was proposed during the hearing; the State presented no specific therapeutic benefits of any one of the four classes of drugs discussed at the hearing—antipsychotics, mood stabilizers, sedatives, and antidepressants; and there was no evidence as to the side effects of antidepressants from Appellant's perspective. According to Appellant, "The trial court, therefore, had no evidence at all before it of 'the risks . . . from the perspective of the patient[]' of taking the antidepressant medication [that the physician] might prescribe from that class, in violation of the [section] 574.106(b)(3) requirement that it consider same." We disagree on all counts.

As the State points out, the health and safety code does not require a medication to be specifically named.[25] Further, while the physician did not parse her testimony about the benefits of each class of medication, she testified adequately about the benefits of the requested medications. She testified that

[23] *See Waldrip*, 380 S.W.3d at 138; *Hogue*, 271 S.W.3d at 248.

[24] *See H.R.M.*, 209 S.W.3d at 108.

[25] *See* Tex. Health & Safety Code Ann. § 574.106 (West 2010).

with the requested medications, Appellant would start sleeping all night and having normal sleep and wake cycles, would have the ability to communicate with others and have logical, coherent speech, and would eventually receive outpatient treatment instead of being confined in the hospital.

As to the absence of the evidence of "the risks . . . , from the perspective of the patient, of taking" antidepressants, the statute does not require the trial court to make findings on the subsection (b) factors.[26]  Further, we see nothing in the statute requiring *the State* to offer evidence from the proposed patient's perspective.[27]  Appellant did not personally appear or testify at the hearing, nor

---

[26]*Id.* § 574.106(a–1), (b); *In re R.S.C.*, 921 S.W.2d 506, 514 (Tex. App.—Fort Worth 1996, no writ).

[27]*See* Tex. Health & Safety Code Ann. § 574.106; *State ex rel. W.W.*, No. 12-13-00045-CV, 2013 WL 3156312, at *6 (Tex. App.—Tyler June 19, 2013, no pet.) (mem. op.) ("Because W.W. presented evidence to the trial court of his preference to avoid an increased dose . . . based upon its side effects and ineffectiveness, it is presumed that the trial court gave his preferences due consideration."); *In re T.O.R.*, No. 02-12-00376-CV, 2013 WL 362747, at *5 (Tex. App.—Fort Worth Jan. 31, 2013, no pet.) (mem. op.) ("T.O.R. did not present any evidence to dispute Sobiesk's testimony about the medications' benefits and the ineffectiveness of alternative treatments."); *M.H. v. State ex rel. M.H.*, No. 01-09-00205-CV, 2009 WL 2050988, at *4–5 (Tex. App.—Houston [1st Dist.] July 16, 2009, no pet.) (mem. op.) (holding evidence sufficient to support trial court's best interest finding when patient did not present any evidence to dispute physician's testimony about benefits of treatment with psychoactive medications and lack of alternative treatments); *State ex rel. A.R.F.*, No. 12-03-00294-CV, 2004 WL 1123832, at *3 (Tex. App.—Tyler May 19, 2004, no pet.) (mem. op.) ("Dr. Plyler's testimony encompassed the factors in Section 574.106 except A.R.F.'s religious beliefs.  A.R.F. presented no testimony on that factor."); *State ex rel. D.P.*, No. 12-03-00005-CV, 2003 WL 21998759, at *7 (Tex. App.—Tyler Aug. 20, 2003, no pet.) ("Dr. Srinivasan's testimony encompassed the factors in Section 574.106, except for D.P.'s religious beliefs.  D.P. did not offer evidence of her religious

did her counsel call any witnesses or cross-examine the physician regarding the risks of antidepressant use from Appellant's perspective. Finally, the physician summarized the risks she presented with the statement, "Those are probably the major side effects." The trial court could have properly inferred that the physician believed that no major side effects other than "tremors or muscle stiffness" would result from antidepressant use should they in fact be prescribed for Appellant.[28]

We likewise reject Appellant's contention that the physician's best interest opinion is conclusory. The physician opined that the medications are in Appellants best interest after testifying about the pros and cons of the psychoactive medication; the opinion is not a bare statement lacking foundation in the record.[29]

Other than Appellant's religious preferences and specific, direct evidence regarding the risks of antidepressants from her perspective, the trial court had

---

beliefs. D.P. did express her preference to be free of medications . . . ."); *R.S.C.*, 921 S.W.2d at 514 ("The evidence in the record, which we have discussed already, clearly demonstrates that in determining the need for Appellant's psychoactive medication, the court considered all of the factors except Appellant's religious beliefs, on which she offered no evidence.").

[28] *See Russell v. Russell*, 865 S.W.2d 929, 933 (Tex. 1993) (noting a fact may be proved by circumstantial evidence when the fact may be fairly and reasonably inferred from other facts).

[29] *See Arkoma Basin Exploration Co. Inc. v. FMF Assocs. 1990-A, Ltd.*, 249 S.W.3d 380, 389 & n.32 (Tex. 2008); *Concentra Health Servs., Inc. v. Everly*, No. 02-08-00455-CV, 2010 WL 1267775, at *10 n.45 (Tex. App.—Fort Worth April 1, 2010, no pet.).

evidence before it regarding all the factors, and we presume that the trial court considered it.[30] Examining the evidence detailed above, we hold that the trial court could have reasonably formed a firm belief or conviction that treatment with psychoactive medication—antipsychotics, mood stabilizers, sedatives, and antidepressants—was in Appellant's best interest under both the legal[31] and the factual[32] sufficiency standards of review. We therefore hold that the evidence is legally and factually sufficient to support the trial court's best interest finding.

In her last subissue, Appellant complains that the written document entitled "Notification of Court's Determination" wrongly indicates that the doctor who admitted her to the hospital testified. The notification requirement in section 574.106(g) is met by the trial court's order to compel psychoactive medication.[33] From this order, Appellant could ascertain what evidence was relied upon and the reasons for the trial court's findings.[34] Further, Appellant appeared at the hearing through counsel, counsel cross-examined the physician, and counsel's

---

[30] See Tex. Health & Safety Code Ann. § 574.106(b); W.W., 2013 WL 3156312, at *6.

[31] See Waldrip, 380 S.W.3d at 138; Hogue, 271 S.W.3d at 248.

[32] See H.R.M., 209 S.W.3d at 108.

[33] See In re M.E.S., No. 04-02-00614-CV, 2003 WL 1240002, at *4 (Tex. App.—San Antonio Mar. 19, 2003, no pet.) (mem. op.); R.S.C., 921 S.W.2d at 515.

[34] See M.E.S., 2003 WL 1240002, at *4; R.S.C., 921 S.W.2d at 515.

14

knowledge is imputed to Appellant.[35]   Finally, Appellant timely filed a brief complaining of the order.  Thus, she can show no harm from this clerical mistake in a notice document.[36]

**Conclusion**

Having rejected all arguments raised in Appellant's sole issue in each cause, we affirm the trial court's temporary health commitment order and subsequent order authorizing the hospital to administer psychoactive medication.

/s/ Lee Ann Dauphinot
LEE ANN DAUPHINOT
JUSTICE

PANEL:  DAUPHINOT, GARDNER, and MEIER

DELIVERED:  August 29, 2014

---

[35]*See Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 584 (Tex. 2006); *In re D.K.*, No. 02-09-00117-CV, 2009 WL 5227514, at *2 (Tex. App.—Fort Worth Dec. 31, 2009, no pet.) (mem. op.).

[36]*See M.E.S.*, 2003 WL 1240002, at *4; *R.S.C.*, 921 S.W.2d at 515.