

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-19-00253-CV

———————————————

IN THE MATTER OF N.N.

On Appeal from County Court at Law No. 2
Wichita County, Texas
Trial Court No. 50572-LR-D

Before Sudderth, C.J.; Gabriel and Bassel, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

Appellant N.N. appeals the trial court's order requiring the administration of psychoactive medication. *See* Tex. Health & Safety Code Ann. § 574.106(a)(2). We affirm.

## Background

While awaiting trial on charges of stalking and harassment, Appellant was found incompetent to stand trial and ordered committed to inpatient mental-health treatment in May 2019. *See* Tex. Code Crim. Proc. Ann. art. 46B.073. Psychiatrist Dr. Peter Fadow, who had begun treating Appellant on July 2, sought an order for the administration of psychoactive medication for N.N. *See id.* art. 46B.086; Tex. Health & Safety Code Ann. §§ 574.104, .106. At the July 10 hearing on the application for such an order, Dr. Fadow testified that Appellant suffers from schizophrenia, which manifests in Appellant through delusional thoughts and delusional fixations on female professionals. According to Dr. Fadow,

> [Appellant] reports that he has - - a group or a military group is pumping gas into his residence at his home and that he has had these attacks going on since 2013 up until the date of his arrest. He also forms these delusional fixations on female professionals, including a Dallas newscaster and an attorney in the Dallas area. [Appellant] has hallucinations. He says this gas that's pumped into his home caused a stinging sensation on his head and also his - - his stomach and that he can smell it. So, he's got olfactory and tactile hallucinations. He has acted on these delusional thoughts, and he's been engaged allegedly in stalking these females and harassing. I also note that from reviewing records of a previous hospitalization at Rusk State Hospital that he has also retaliated in the past as well.

Dr. Fadow testified that Appellant presents a danger to others at the hospital, specifically to female professionals working there. Although Dr. Fadow admitted that it had yet to happen, he explained, "[Appellant's] pattern is to think that he has romantic relationships with these women, and I think that could occur here as well."

Appellant refused to voluntarily take medication because he did not believe he suffered from a mental illness. Appellant also refused psychoactive medication because of prior side effects he suffered related to heart conditions when he had taken antipsychotic medications in the past.[1] But according to Dr. Fadow, "the internist on [Appellant's] heart condition" had verified that Appellant could be safely treated with antipsychotic medications and "cleared him for medication," without any need to follow up with a cardiologist. Consequently, Dr. Fadow recommended Appellant take Abilify, a "very effective antipsychotic" that would also cause the least side effects. And while Appellant had complained that Abilify made him feel hungry, Dr. Fadow expressed confidence that weight gain caused by increased hunger could be controlled through diet. Because weight gain could cause other medical problems, such as high blood pressure, Dr. Fadow testified that the medical team keeps a close eye on the situation: "[W]e monitor it very closely here, and we do have a dietitian to prevent the excessive weight gain from occurring."

---

[1]According to Dr. Fadow, Appellant "has a history of a slower heart rate called bradycardia, also left ventricular hypertrophy, and it does limit his - - the medications that he can use."

3

In Dr. Fadow's opinion, Appellant would continue to be psychotic without medication, "and his paranoid delusions are such that he will form a fixation, probably on one of our female staff, a physician or a social worker, and he might become aggressive as he has previously." Dr. Fadow testified that there were no available alternatives or less intrusive treatments available that would likely produce the same results as treatment with medication.

According to Dr. Fadow, when he had attempted to explain the benefits and side effects of Abilify to Appellant, Appellant did not appear to fully understand them. Dr. Fadow attributed Appellant's lack of understanding to Appellant's mistaken belief that he did not suffer from delusional thoughts or hallucinations. Based upon his observations and interactions with Appellant, Dr. Fadow concluded that medication was in Appellant's best interests and that Appellant lacked the capacity to make decisions about its administration.

Appellant also testified at the hearing. He confirmed that he suspected that toxic gas was being pumped into his home and causing his high blood pressure. And he testified that although he had taken Abilify in the past, it was ineffective:

> A. …[T]he key issue is what benefits you're going to have. And these thoughts that Dr. Fadow refers to as delusions, which may or may not be true, didn't change - -
>
> Q. Okay.
>
> A. - - so that's the core issue of taking the medication is they're going to change your thought process. And did it change? No.

4

Appellant reiterated his concern that medication could cause him to gain weight and that, in turn, his blood pressure would again rise to unhealthy levels. Appellant also complained that Abilify gave him an "icky feeling," causing him to feel anxious, to suffer from dry mouth, and to experience difficulty in sleeping, concentrating, and exercising.

The trial court granted the application for medication administration. In its written order, the trial court found by clear and convincing evidence that Appellant was in need of psychoactive medication and that

- Appellant was under a court order to receive inpatient mental health services;

- Appellant was in custody awaiting trial in a criminal proceeding and was ordered to receive inpatient mental health services in the six months preceding the hearing;

- Appellant lacked the capacity to make a decision regarding the administration of the proposed medication and treatment with the proposed medication was in the best interest of Appellant;

- Appellant was ordered to receive inpatient mental health services by a criminal court with jurisdiction over him, he presented a danger to himself or others in the inpatient facility in which he was being treated as a result of a mental disorder or mental defect as determined under section 574.1065, and treatment with the proposed medication was in Appellant's best interest; and

- the proposed medication was in the proper course of treatment, was in Appellant's best interest, and Appellant was refusing to take the medication voluntarily.

*See* Tex. Health & Safety Code Ann. § 574.106.

## Discussion

Appellant brings one issue on appeal challenging the legal and factual sufficiency of the evidence supporting the trial court's order authorizing the administration of medication.

## I. Psychoactive-medication orders

Trial courts may authorize the administration of one or more classes of psychoactive medication to a patient who is in custody awaiting trial in a criminal proceeding and who was ordered to receive inpatient mental-health services preceding a hearing. *Id.* § 574.106(a)(2). In order to do so, the trial court must find by clear and convincing evidence

> (1) that the patient lacks the capacity to make a decision regarding the administration of the proposed medication and treatment with the proposed medication is in the best interest of the patient; or

> (2) if the patient was ordered to receive inpatient mental health services by a criminal court with jurisdiction over the patient, that treatment with the proposed medication is in the best interest of the patient and . . . :

>> (A) the patient presents a danger to the patient or others in the inpatient mental health facility in which the patient is being treated as a result of a mental disorder or mental defect as determined under Section 574.1065[.]

*Id.* § 574.106(a-1).

Clear and convincing evidence is that measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *In re S.P.*, 444 S.W.3d 299, 302 (Tex. App.—

Fort Worth 2014, no pet.). While the proof must be of a heavier weight than merely the greater weight of the credible evidence, there is no requirement that the evidence be unequivocal or undisputed. *Id.*

In weighing the evidence, the trial court is required to consider:

(1) the patient's expressed preferences regarding treatment with psychoactive medication;

(2) the patient's religious beliefs;

(3) the risks and benefits, from the perspective of the patient, of taking psychoactive medication;

(4) the consequences to the patient if the psychoactive mediation is not administered;

(5) the prognosis for the patient if the patient is treated with psychoactive medication;

(6) alternative, less intrusive treatments that are likely to produce the same results as treatment with psychoactive medication; and

(7) less intrusive treatments likely to secure the patient's agreement to take the psychoactive medication.

Tex. Health & Safety Code Ann. § 574.106(b). And finally, if the trial court makes a finding that the patient presents a danger to himself or others in the inpatient mental-health facility in which he is being treated, the trial court shall consider:

(1) an assessment of the patient's present mental condition;

(2) whether the patient has inflicted, attempted to inflict, or made a serious threat of inflicting substantial physical harm to the patient's self or to another while in the facility; and

(3) whether the patient, in the six months preceding the date the patient was placed in the facility, has inflicted, attempted to inflict, or made a

7

serious threat of inflicting substantial physical harm to another that resulted in the patient being placed in the facility.

*Id.* § 574.1065.

## II. Standard of review

When evaluating the legal sufficiency of the evidence, we determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that its finding was true. *S.P.*, 444 S.W.3d at 302. We review all of the evidence in the light most favorable to the finding, resolve any disputed facts in favor of the finding if a reasonable factfinder could have done so, disregard all evidence that a factfinder could have disbelieved, and consider undisputed evidence even if it is contrary to the finding. *Id.* The factfinder, not this court, is the sole judge of the credibility and demeanor of the witnesses. *Id.*

When evaluating the factual sufficiency of the evidence, we determine whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that its finding was true. *Id.* at 303. If the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not have reasonably formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient. *Id.* We must not supplant the trial court's judgment with our own. *Id.*

## III. Application

Although Appellant's issue on appeal is couched as an evidentiary-sufficiency complaint, it also challenges the constitutionality of the statute governing the forced medication of "non-dangerous" patients ordered by a criminal court to receive mental-health treatment.[2]  *See* Tex. Health & Safety Code Ann. § 574.106(a-1).  But challenges to the constitutionality of a statute may be waived, *In re R.B.*, 225 S.W.3d 798, 801 (Tex. App.—Fort Worth 2007, no pet.), and by neglecting to raise this argument in the trial court, Appellant failed to preserve it for our review.  Tex. R. App. P. 33.1(a)(1)(A); *see also* Tex. R. Evid. 103(a)(1); *Bushell v. Dean*, 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh'g).  We presume that statutes enacted by our legislature are constitutional, and attacks on that presumption should generally be raised as an affirmative defense to the enforcement of the statute.  In the absence of such a complaint in the trial court, we are without authority to consider it.  *R.B.*, 225 S.W.3d at 801.  We therefore overrule this portion of Appellant's argument.

Appellant's challenge to the sufficiency of the evidence appears to be limited to the trial court's finding that he lacked capacity to make a decision regarding the

---

[2]Appellant argues in his brief that "applying Section 574.106(a-1)(1) to a non-dangerous 46B patient is an Unconstitutional [sic] violation of that patient's due process rights because it does not consider the 4-part test required by the United States Supreme Court in *Sell v. United States*[, 539 U.S. 166, 123 S. Ct. 2174 (2003)]."

administration of medication.[3] While Appellant argues that his testimony at the hearing demonstrated his capacity to make medication decisions, he ignores evidence to the contrary—specifically, Dr. Fadow's testimony about Appellant's failure to understand or admit to his delusional condition. Dr. Fadow testified that Appellant's schizophrenic condition manifests in delusional thoughts and fixations on female professionals. Dr. Fadow detailed Appellant's claims that the government had been pumping gas into his residence and causing hallucinations. He also testified about Appellant's fixation on a female newscaster and a female attorney. Although Appellant demonstrated knowledge and intelligence during his testimony,[4] during his brief testimony Appellant also rambled and required redirection through counsel.[5] Throughout his testimony, Appellant repeated his doubt as to Dr. Fadow's assessment of his medical condition and "alleged delusions" referring to his delusions

---

[3]Appellant does not challenge the trial court's findings that Appellant presents a danger to himself or others in his mental-health facility. By failing to do so, Appellant has arguably forfeited any argument regarding the factual sufficiency of the evidence supporting the trial court's finding of Appellant's dangerousness. *See* Tex. R. App. P. 33.1(a)(1)(A).

[4]For example, while complaining about the "sedative effect" of the proposed medication, Appellant offered, "So, I mean, Justice Scalia has recognized it's hard to go through a trial when you're on the antipsychotic medication. He was a supreme court justice."

[5]At one point, Appellant digressed into a query of why he was sent to sit out in the hall frequently in third grade, followed by an observation that "you have not verified whether or not this toxic gas is being pumped into my home."

as "these thoughts that Dr. Fadow refers to as delusions, which may or may not be true."

"Capacity" is statutorily defined as a patient's ability to understand the nature and consequences of a proposed treatment, including the benefits, risks, and alternatives to the proposed treatment; and to make a decision whether to undergo the proposed treatment. Tex. Health & Safety Code Ann. § 574.101(1). To understand the nature and consequences of a proposed treatment, one must recognize the nature of the condition to be treated. *See A.S. v. State*, 286 S.W.3d 69, 73 (Tex. App.—Dallas 2009, no pet.) (holding evidence sufficient to support lack-of-capacity finding when schizophrenic patient did not understand nature of her illness and necessity of the medications). In addition to the fact that Appellant questioned Dr. Fadow's characterization of his beliefs as delusions, Appellant's chief complaint about the medication was the weight gain and the consequent risk of a heart attack. But Dr. Fadow testified that an internist had approved the administration of medication despite his heart conditions and that Appellant's weight would be monitored and could be managed through diet.

Examining the entirety of the record, the evidence is legally and factually sufficient to support the trial court's finding by clear and convincing evidence that Appellant lacked the capacity to make a decision regarding the proposed medication and that the medication was in his best interest. *See id.*; *In re C.S.*, 208 S.W.3d 77, 84–85 (Tex. App.—Fort Worth 2006, pet. denied) (holding evidence sufficient to support

11

lack-of-capacity finding where patient's physician testified that medication could improve patient's quality of life by alleviating delusions and that patient's condition had previously improved while taking medication). We therefore overrule Appellant's sole issue.

## Conclusion

Having overruled Appellant's sole issue, we affirm the trial court's order.


/s/ Bonnie Sudderth
Bonnie Sudderth
Chief Justice

Delivered: August 28, 2019