

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

## No. 02-19-00262-CV

_____

### IN THE MATTER OF N.S.

On Appeal from County Court at Law No. 1
Wichita County, Texas
Trial Court No. 50576-LR-D

Before Sudderth, C.J.; Kerr and Birdwell, JJ.
Memorandum Opinion by Justice Birdwell

# MEMORANDUM OPINION

Appellant N.S. appeals from the trial court's order authorizing the administration of psychoactive medications. *See* Tex. Health & Safety Code Ann. § 574.106(a)(2). We affirm.

## Background

On July 13, 2019, while awaiting trial on a charge of misdemeanor assault, N.S. was found incompetent to stand trial. The trial court ordered her committed to a mental-health facility for inpatient mental-health treatment under code of criminal procedure chapter 46B with the specific objective of achieving competency. *See* Tex. Code Crim. Proc. Ann. art. 46B.073.

On July 12, 2019, Dr. Charlene Shero, N.S.'s attending physician at the facility, filed an application under health and safety code section 574.104 for an order to authorize the involuntary administration of psychoactive medication to N.S. In the application, Dr. Shero stated that if N.S. were treated with the psychoactive medicine specified in the application, N.S.'s prognosis would be "[m]uch improved," the "[r]isk of further aggression w[ould] decline," "[c]ompetency m[ight] be restored, [and N.S. would] no longer suffer paranoia."

The trial court held a hearing on the application on July 15, 2019. Dr. Shero testified that N.S. has schizophrenia, paranoid type. The doctor stated that a team at the facility had met with N.S. that morning and the previous week, and "[o]n each occasion, she [was] very disorganized. She denie[d] mental illness. She ha[d] odd and

illogical speech. . . . [S]he[ was] quite guarded to the point of paranoia." Dr. Shero characterized N.S. as "quite disorganized" and stated that N.S. had expressed that she wanted to "visit various places in the world and get 'chava,'" which N.S. said was "a psychostimulant of some importance." Dr. Shero further explained,

> Initially, [N.S.] would not speak to us for a protracted period of time, stating she was busy with Homeland Security business. She was, prior to admission here, arrested for assault on a security officer and when they became aware of her mental status, they dropped that down to a misdemeanor, realizing at that time that it may be due to other reasons. But she was originally assaultive on a security officer.

Dr. Shero testified that N.S. was a danger to others, as evidenced by the fact that she had assaulted a security officer. N.S. had not, however, acted aggressively toward any staff or other patients at the hospital. Dr. Shero did not know if N.S. was aggressive while at the jail, although she was "blanketly uncooperative and defensive." Dr. Shero further "argue[d] very strongly that [N.S.'s] pattern of traveling about the country without any means of support or other people and then breaking into cars for shelter place[d] her at a tremendous risk of assault by others, of unsafe housing, [and demonstrated] just very, very poor judgment."

Dr. Shero stated that N.S. had refused medications other than agreeing to "a completely ineffective dose of Haldol that . . . would not even be enough for a pediatric case, to help organize her thoughts." The basis of N.S.'s refusal was that she "d[id]n't do meds." Dr. Shero stated that N.S. needed antipsychotics and possibly a mood stabilizer and anxiolytics. Dr. Shero believed that on the proper medications,

N.S. would improve; "she is natively quite intelligent, and . . . with even a week of treatment, . . . she would be found competent." Without the medications, on the other hand, Dr. Shero "could not at any time call [N.S.] competent with her delusions and her inability to cooperate with people that disagree with her."

Asked about N.S.'s capacity to make a decision about taking medication, Dr. Shero stated that N.S. "[was] crippled by her paranoia to allow that intrusion" and "[was] hyper-aware of every possible [medication] side effect that could possibly happen, but not in a realistic perspective." Dr. Shero testified that taking medication was "absolutely" in N.S.'s best interest. The alternative to medications for N.S.'s condition is electroconvulsive therapy, which Dr. Shero characterized as "impractical, nonsustainable[,] and frightening."

N.S. testified about why she wanted to negotiate her own treatment. She explained, "I'm an individual human being and that's my right to be able to do that, the right to refuse, to negotiate, to not agree with the course of care." When asked if she wanted the trial court to deny the application, she initially responded that she was "not necessarily asking for that" and that she "feel[s] anxious sometimes due to large amounts of work and burnout, uh, tons of work." But she testified that it would upset her if she were administered medication that she had not consented to take.

N.S. disputed Dr. Shero's diagnosis of her. Asked if she understood that she had been diagnosed with schizophrenia, paranoid type, N.S. explained that her understanding was that

4

that diagnosis was put on there in question because of all the different medications from before and it had never been substantiated and it still [wasn't] to [her] knowledge. So that would be one of the problematic—the diagnosis was depression and that was due to severe psychological abuse and not understanding the medications during that time and side effects and any and all of that and working way too much.

Asked if she heard Dr. Shero testify about her diagnosis, N.S. stated,

> Yeah, and then that's where then that separate piece, you can provide me medicine for that, and as you do so, then I'll take that further to state and federal court, because that was not my diagnosis.
>
> . . . .
>
> I'll accept that you're going to provide me medicine for something that I do not have. But, unfortunately, large amounts of different people were provided medicine for different diagnoses that were not present and can be created by different abuse.

In closing arguments, N.S.'s attorney stated that for an order for the administration of medication under health and safety code section 574.106, the State was required to show that N.S. presented a danger to herself or to others in the inpatient mental-health facility or that she had remained confined in a correctional facility for seventy-two hours and presented a danger there, but it had failed to do so. In response, the State's attorney argued that section 574.106 "give[s] an either/or option"; the trial court may also issue an order under the section if the patient "lacks the capacity to make a decision regarding the administration of the proposed medication and . . . the treatment with the proposed medication is in the best interest of the patient."

The trial court signed a "Notification of Court's Determination—Forensic" stating that it had determined that N.S. did not have the capacity to make a proper determination regarding the administration of the proposed medications and that treatment with antipsychotics, mood stabilizers, and anxiolytics was in her best interest. The notice stated that "[t]he reasons for the court's determination are that the Court believes the benefits to be obtained by treatment are greater than any risks that may be encountered by treatment with the proposed medication(s), and there is no suitable alternative at this time."

In a separate order, the trial court granted the application for medication administration. In this order, the trial court found by clear and convincing evidence that

> 1. [N.S.] lack[ed] the capacity to make a decision regarding the administration of the proposed medication;
>
> 2. treatment with the proposed medication [would be] in the best interest of [N.S.]; and
>
> 3. either:
>
>> A. [N.S.] present[ed] a danger to [herself] or others in the inpatient mental health facility in which [she] [was] being treated as a result of a mental disorder or mental defe[ct] as determined under [s]ection 574.1065 of the *Texas Mental Health Code;* or
>>
>> B. [N.S.]:
>>
>>> i.    ha[d] remained confined in a correctional facility, as defined by Section 1.07, *Texas Penal Code,* for a period exceeding 72 hours while awaiting transfer for competency restoration treatment; and

6

> ii.    present[ed] a danger to [herself or] others in the correctional facility as a result of a mental disorder or mental defect as determined under [s]ection 574.1065 of the *Texas Mental Health Code.*

N.S. now appeals.

## Discussion

In her sole issue, N.S. argues that evidence was legally and factually insufficient to support authorizing the administration of psychoactive medications over her refusal.

## I. Psychoactive-medication orders

Trial courts may authorize the administration of one or more classes of psychoactive medication to a patient who is in custody awaiting trial in a criminal proceeding and was ordered to receive inpatient mental-health services preceding a hearing. Tex. Health & Safety Code Ann. § 574.106(a)(2). In order to do so, the trial court must find by clear and convincing evidence

> (1) that the patient lacks the capacity to make a decision regarding the administration of the proposed medication and treatment with the proposed medication is in the best interest of the patient; or
>
> (2) if the patient was ordered to receive inpatient mental health services by a criminal court with jurisdiction over the patient, that treatment with the proposed medication is in the best interest of the patient and . . . :
>
> (A) the patient presents a danger to the patient or others in the inpatient mental health facility in which the patient is being treated as a result of a mental disorder or mental defect as determined under Section 574.1065. . . .

*Id.* § 574.106(a-1). Clear and convincing evidence is that measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *In re S.P.*, 444 S.W.3d 299, 302 (Tex. App.—Fort Worth 2014, no pet.). While the proof must be of a heavier weight than merely the greater weight of the credible evidence, there is no requirement that the evidence be unequivocal or undisputed. *Id.*

> In weighing the evidence, the trial court is required to consider:
>
> (1) the patient's expressed preferences regarding treatment with psychoactive medication;
>
> (2) the patient's religious beliefs;
>
> (3) the risks and benefits, from the perspective of the patient of taking psychoactive medication;
>
> (4) the consequences to the patient if the psychoactive medication is not administered;
>
> (5) the prognosis for the patient if the patient is treated with psychoactive medication;
>
> (6) alternative, less intrusive treatments that are likely to produce the same results as treatment with psychoactive medication; and
>
> (7) less intrusive treatments likely to secure the patient's agreement to take the psychoactive medication.

Tex. Health & Safety Code Ann. § 574.106(b).

## II. Standard of review

When evaluating the legal sufficiency of the evidence, we determine whether the evidence is such that a factfinder could reasonably form a firm belief or

conviction that its finding was true. *S.P.*, 444 S.W.3d at 302. We review all of the evidence in the light most favorable to the finding, resolve any disputed facts in favor of the finding if a reasonable factfinder could have done so, disregard all evidence that a factfinder could have disbelieved, and consider undisputed evidence even if it is contrary to the finding. *Id.* The factfinder, not this court, is the sole judge of the credibility and demeanor of the witnesses. *Id.*

When evaluating the factual sufficiency of the evidence, we determine whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that its finding was true. *Id.* at 303. If the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not have reasonably formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient. *Id.* We must not supplant the trial court's judgment with our own. *Id.*

## III. Application

N.S.'s single issue comprises two parts, both relying on the United States Supreme Court's opinion in *Sell v. United States*: a constitutional challenge to section 574.106 and a sufficiency challenge to the evidence supporting the trial court's findings of lack of capacity and best interest. *See* 539 U.S. 166, 180–81, 123 S. Ct. 2174, 2184–85 (2003).

9

## A. N.S.'s constitutional challenge to section 574.106

"[A]n individual has a 'significant' constitutionally protected 'liberty interest' in 'avoiding the unwanted administration of antipsychotic drugs.'" *Id.* at 178, 123 S. Ct. at 2183 (quoting *Washington v. Harper*, 494 U.S. 210, 221, 110 S. Ct. 1028, 1036 (1990)). A court may order the involuntary administration of medication to a criminal defendant to render the defendant competent to stand trial, "but only if the treatment is medically appropriate, is substantially unlikely to have side effects that may undermine the fairness of the trial, and, taking account of less intrusive alternatives, is necessary significantly to further important governmental trial-related interests." *Id.* at 179, 123 S. Ct. at 2184.

*Sell* sets out a four-part test for involuntary administration of drugs solely for trial competence purposes.[1] *Id.* at 180–81, 123 S. Ct. at 2184–85. N.S. argues that section 574.106 "wholly fails to meet this four[-]part test" and that applying that section to "a non-dangerous 46B patient is an [u]nconstitutional violation of that patient's due process rights." In response, the State asserts that "N.S. wholly failed to

---

[1]The four parts are that (1) "a court must find that *important* governmental interests are at stake"; (2) "the court must conclude that involuntary medication will *significantly further* those concomitant state interests"; (3) "the court must conclude that involuntary medication is *necessary* to further those interests"; and (4) "the court must conclude that administration of the drugs is *medically appropriate, i.e.,* in the patient's best medical interest in light of his [or her] medical condition." *Id.* at 180–81, 123 S. Ct. at 2184–85 (emphasis in original).

raise this complaint in the trial court, and she therefore did not preserve the complaint for this court's review."

Challenges to the constitutionality of a statute may be waived. *In re R.B.*, 225 S.W.3d 798, 801 (Tex. App.—Fort Worth 2007, no pet.). We presume that statutes enacted by our legislature are constitutional, and attacks on that presumption should generally be raised as an affirmative defense to enforcement of the statute. *Id.* In the absence of such a complaint in the trial court, we are without authority to consider it. *Id.*

In her reply brief, N.S. contends that in her closing argument in the trial court, "counsel for N.S. directly addressed . . . that the statute relied upon by the State was unsatisfactory to force medications upon [her] without a showing of dangerous conduct, and this squarely placed the [trial court] on notice that the due process afforded by the statute was challenged." We disagree. Counsel's argument was that the matter "falls squarely under [s]ection 574.106 (a-1)(B)" and that the State had failed to meet its burden under that section. This argument did not put the trial court on notice of a constitutional challenge. By neglecting to raise her constitutional complaint in the trial court, N.S. failed to preserve it for our review. *See* Tex. R. App. P. 33.1(a)(1)(A); *see also Bushell v. Dean*, 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh'g).

We overrule this portion of N.S.'s issue.

### B. Capacity and best interest

#### 1. Sufficiency of evidence to support finding

Capacity is defined in the health and safety code as an ability to "understand the nature and consequences of a proposed treatment, including the benefits, risks, and alternatives to the proposed treatment" and to "make a decision whether to undergo the proposed treatment." Tex. Health & Safety Code Ann. § 574.101(1).

N.S. challenges the trial court's finding of lack of capacity by first arguing that a physician "would invariably say" that a patient lacks capacity to make a decision about proposed treatment "if that patient disagrees with the physician's professional opinion." N.S. likewise challenges the best-interest finding by arguing that "[l]ogic would also lead one to believe that a physician, charged with taking care of a patient, would believe that their decision was in the best interest of the patient." But N.S. does not discuss the evidence supporting the trial court's finding.

N.S.'s testimony showed that she did not understand her diagnosis. Dr. Shero also testified that N.S. did not acknowledge her mental illness. Dr. Shero further testified that as far as N.S.'s capacity to make a decision about her medication, she was "crippled by her paranoia" in that regard, was unrealistic about possible side effects of the medication, and wanted to travel the world to get supposedly "natural" psychostimulants. The testimony was sufficient for the trial court to reasonably form a firm belief that N.S. did not have the ability to understand the nature and

consequences of the proposed medications or to make a decision whether to take them.

As far as N.S.'s best interest, the trial court had evidence that she did not want to take the proposed medications because she disagreed that they fit her diagnosis; that if she took the medications, she would improve; that without them, N.S. showed poor judgment and her lifestyle placed her "at a tremendous risk of assault by others"; and that the alternative treatment was "impractical, nonsustainable[,] and frightening" electroconvulsive therapy. Dr. Shero testified that medication was "absolutely" in N.S.'s best interest. This testimony was sufficient for the trial court to have reasonably formed a firm belief or conviction that administration of the proposed medications was in N.S.'s best interest.

In sum, examining the entire record, the evidence is legally and factually sufficient to support the trial court's findings that N.S. lacked the capacity to make a decision regarding the proposed medication and that medication was in her best interest. *See In re K.S.*, No. 11-19-00064-CV, 2019 WL 1841894, at *2 (Tex. App.— Eastland Apr. 25, 2019, no pet.) (mem. op.) (holding evidence sufficient to support lack-of-capacity and best-interest findings when patient with delusional disorder denied her illness and did not understand the necessity of the medications); *In re C.S.*, 208 S.W.3d 77, 84–85 (Tex. App.—Fort Worth 2006, pet. denied) (holding evidence legally sufficient to support lack-of-capacity finding when patient's physician testified

that medication could improve patient's quality of life by alleviating delusions and that patient's condition had previously improved while taking medication).

## 2. Whether the evidence must satisfy *Sell*

The main focus of N.S.'s challenge to the lack-of-capacity and best-interest findings is her contention that before a trial court may order medications administered to her, the State must satisfy not only section 574.106(a-1)(1) but also *Sell*'s four-part test. *See Sell*, 539 U.S. at 180–81, 123 S. Ct. at 2184–85.

The State responds that *Sell* applies only when (1) the sole purpose for which the State seeks involuntarily administration of medication of a person is to render the person competent to stand trial and (2) the person is charged with a nonviolent offense. Because N.S. is charged with assaulting a security officer, and because the trial court authorized her medication on the basis that medicating her was in her best interest and that she did not have the capacity to make decisions about her medication, the State contends that *Sell*'s four-part test is inapplicable.

We agree that *Sell* does not apply when the State seeks involuntary medication administration for some purpose other than restoring competency. *See id.* at 181–82, 123 S. Ct. at 2185; *State ex rel. S.O.*, No. 04-13-00812-CV, 2014 WL 3928665, at *6 (Tex. App.—San Antonio Aug. 13, 2014, no pet.) (mem. op.). *Sell* states that its test applies when a court "is seeking to determine whether involuntary administration of drugs is necessary significantly to further a particular governmental interest, namely, the interest in rendering the defendant *competent to stand trial*," but "[a] court need not

14

consider whether to allow forced medication for that kind of purpose, if forced medication is warranted for a *different* purpose," such as the person's dangerousness or when the person's refusal to take drugs puts the person's health at risk. *Sell*, 539 U.S. at 181–82, 123 S. Ct. at 2185 (emphasis in original). As *Sell* recognizes, "There are often strong reasons for a court to determine whether forced administration of drugs can be justified on these alternative grounds *before* turning to the trial competence question." *Id.* (emphasis in original).

Here, Dr. Shero testified about the effect medication would have on N.S.'s competency. But Dr. Shero's testimony also reflects her belief that it was "absolutely" in N.S.'s best interest to administer medication to her. *See S.O.*, 2014 WL 3928665, at *6. Dr. Shero explained that she felt strongly that N.S.'s untreated mental illness presented a danger to N.S. because of her "pattern of traveling about the country without any means of support or other people and then breaking into cars for shelter[, which] place[d] her at a tremendous risk of assault by others." And the trial court specifically found that medicating N.S. was in her best interest. Thus, because involuntary administration of the proposed medications is justified on an alternative ground aside from restoring competency, *Sell* does not apply. *See id.*

We overrule the remainder of N.S.'s issue.

### Conclusion

Having overruled N.S.'s sole issue, we affirm the trial court's order.

15

/s/ Wade Birdwell
Wade Birdwell
Justice

Delivered: August 29, 2019